TOWN OF WEST HARTFORD *v.* EMELINE TALCOTT ET AL.

BROWN, C. J., JENNINGS, BALDWIN, O'SULLIVAN and KING, Js.

Argued May 8—decided July 3, 1951

*Anson T. McCook,* with whom was *Nicholas B. Eddy,* for the appellants (defendants).

*Harrison D. Schofield,* for the appellee (plaintiff).

BROWN, C. J.   The plaintiff town, in the exercise of its function as a school district, brought two petitions to the Superior Court, each for the appointment of a committee to assess just damages for the taking of land for school purposes.   Of the two properties involved, one,

referred to hereinafter as the Emeline Talcott tract, has
an area of 1.36 acres; the other, referred to as the Eliza-
beth W. Talcott tract, has an area of 7.26 acres.  The
two parcels adjoin each other, and the cases, which in-
volve the same issues, were tried together.  The record
in the former action only has been printed, but it is
stipulated that both cases present the same questions of
law and that the judgment rendered by this court upon
the record presented may also be entered in the other
case.  The trial court found for the plaintiff and en-
tered an order appointing a committee to proceed in
accordance with § 7181 of the General Statutes.  The
defendants have appealed.

The salient facts found by the court, which are not
subject to material correction, may be thus summarized:
The plaintiff owns 3.2 acres of land on the northwest-
erly corner of New Britain Avenue and Quaker Lane
South in West Hartford.  The tract is bounded easterly
by Quaker Lane South for about 865 feet and northerly
by the plaintiff's Beachland Park for 244 feet, and
tapers to a width of about 137 feet on New Britain
Avenue at the south.  The Talcott Junior High School
occupies approximately the center of the tract, with
about an acre to the south and a like area to the north
occupied by the school's playgrounds.  Emeline Talcott
owns the property abutting the school land on the west.
Her parcel fronts 118 feet on New Britain Avenue and
is bounded on the east 817 feet by the school land and
on the north by the park.  Approximately the north-
erly three-quarters of this parcel is the Emeline Talcott
tract which the plaintiff seeks to condemn.  The Eliza-
beth W. Talcott tract which it also seeks to take lies just
to the west and is bounded northerly 695 feet by the
park and easterly about 535 feet by the Emeline Talcott
tract.  The two pieces together form roughly an 8.62-
acre rectangle bounded northerly by the park, easterly

by the school land, southerly by remaining land of the
defendants and westerly by that of various owners.
The southerly line of this combined tract is a continu-
ous east to west line substantially parallel to and 218
feet north of the north line of New Britain Avenue. The
entire frontage of the defendants' land on New Britain
Avenue is zoned for business to within about sixty feet
of the area sought to be condemned. The south side of
the avenue is also zoned for business, as well as the
easterly side of Quaker Lane South in the vicinity of
the intersection of these two main heavily traveled
thoroughfares.

The Talcott Junior High School represents an invest-
ment of over $234,000. Its present playgrounds are too
small for the proper physical education of the pupils
but are usable for informal games or other purposes
connected with the operation of the school. The plain-
tiff seeks to condemn the defendants' combined 8.62-
acre tract to provide space for the erection of an addi-
tion to the school building and for playing fields to be
used in connection with courses of instruction in the
school. On October 8, 1948, the plaintiff's town mana-
ger was authorized by the town council to negotiate
with the defendants for the acquisition of the tract.
Before this, members of the board of education, the
superintendent of schools and several real estate agents
had carried on negotiations with the defendants with-
out success. As a result, the parties started to nego-
tiate for a slightly smaller piece, in which a strip fifty
feet wide along the southerly side was not included.
The 8.62-acre tract more accurately satisfies the plain-
tiff's needs for expansion of the school building and
playgrounds, as is further set forth below.

At no time during the negotiations did the purchase
price present the primary difficulty, but a major factor
in their breakdown was the plaintiff's refusal to guar-

antee to the defendants that its zoning authority would extend the business zone a number of feet to the north to include an additional portion of their remaining land. The vote to acquire the full 8.62-acre tract was duly adopted by the town council, but with a limitation as to the amount to be offered to the owners. The parties have not agreed that all of the land to be taken is necessary, nor what price is to be paid. On February 24, 1949, the town council voted that its corporation counsel be authorized and directed to institute condemnation for the purpose of acquiring for school purposes the two pieces comprising the 8.62-acre tract.

The most accurate method of forecasting school requirements indicates that the present enrolment of 296 in the Talcott School will reach 315 in 1951, 580 in 1957, and ultimately 800. Under the modern theory of maximum classes of thirty pupils each, the present facilities will accommodate a total of 320. Unless the expansion of the school's physical plant, which has been under consideration for several years, is carried out immediately, it will be necessary to abandon the present school and build a new junior high school to serve the southerly part of the town. The contemplated expansion, if made, will suffice for the next ten years. To permit proper instruction for the increasing enrolment, the present building ought to be enlarged by increasing the size of the gymnasium and of the auditorium and by adding a new boiler room, ten classrooms and eleven other rooms for related purposes. The addition so required will more than double the size of the building. By reason of the need of devoting the vacant land of the present property to parking and other incidental purposes, it affords no space for the addition. The rear of the present building is within a few feet of the easterly boundary of the 8.62-acre tract, which is the most available and suitable place for the addition.

The importance of physical education in the curriculum makes it reasonably necessary to provide a playfield adjacent to the school building. This will require sufficient land to the west of the addition to furnish adequate baseball and softball fields and additional space for less formal games, so that all of these games can be played simultaneously during many periods of the school day. While not absolutely essential, it is highly desirable to have for baseball a field 360 feet square with a catcher's area 60 feet in radius to the rear of home plate and to locate the diamond so that the line from home plate to second base is in a generally east and west direction. A field with the length of the foul lines reduced from 300 to 250 feet would meet the minimum requirements of the rules. A softball field should be 250 feet square plus a catcher's area and a place for a backstop. At the northwest corner of the 8.62-acre tract the surface of the land falls off into a gully twenty feet deep through which a stream runs. The expense of bringing this land to grade for use as part of the playing fields would be prohibitive. To provide space for a 360-foot baseball field without filling the gully, or, if it is filled, for a properly oriented diamond, a proper softball field and the required area for informal games, the entire 8.62-acre tract is needed. While either the limiting of the baseball field to the 250-foot dimension or the filling of the gully would render it possible to lay out the baseball and softball fields without overlapping and without encroaching on the 50-foot strip along the south side of the 8.62-acre tract, not enough space would remain for the informal games. Although the plaintiff maintains Beachland Park for the recreation of the public generally, it is not a part of the educational program. Because of the terrain, the park is difficult of access from the school except by way of Quaker Lane South, its surface in the area near the

school is so low and wet that it is not suitable for development as a playfield, and its baseball diamond is too far away to be utilized. Plans for the use of the properties sought to be taken for an addition to the school and for a playfield, along the lines stated above, were carefully prepared by the principal and the superintendent of schools, were approved by the board of education and formed the basis of the action of the town council in voting to acquire the property.

Section 7175 of the General Statutes, in connection with § 7176, provides that a town "may take land which has been fixed upon as a site, or addition to a site, of a public schoolhouse, and which is necessary for such purpose or for outbuildings or convenient accommodations for its schools, upon paying to the owner just compensation," and § 7181, pursuant to which the present action was brought, prescribes the procedure for condemning land in such case. The court concluded: (1) All of the preliminary steps necessary to the institution of these proceedings were properly taken; (2) the statute gives the right to the plaintiff to take under the power of eminent domain any property which is reasonably necessary for an addition to a site of a public schoolhouse; (3) it is not a question of what is absolutely or indispensably necessary but what is reasonably necessary; (4) all of the land sought to be taken in these proceedings is reasonably necessary to provide space adequate for required additions to the Talcott Junior High School and a proper playfield in connection therewith; (5) a committee should be appointed to proceed in accordance with § 7181. While the defendants raise some minor questions under their assignments of error, their brief defines as the principal issues their attack upon the court's first and fourth conclusions.

In support of the contention of the defendants that

the court's conclusion that the plaintiff took the preliminary steps essential to the institution of these proceedings is unwarranted, they argue that the plaintiff failed to establish inability to agree with the defendants upon the amount to be paid for the property to be condemned. By its express terms, § 7181 applies only "in case those desiring to take such property cannot agree with the owner upon the amount to be paid him for any property thus taken." Inability to agree is a condition precedent to relief under the statute. *Stafford Springs Street Ry. Co.* v. *Middle River Mfg. Co.*, 80 Conn. 37, 42, 66 A. 775; *Connecticut College* v. *Alexander*, 85 Conn. 602, 605, 84 A. 365, 366. It is incumbent upon the condemnor to exhaust "all reasonable efforts to obtain the land it desires, by agreement." *New York, N. H. & H. R. Co.* v. *Long*, 69 Conn. 424, 438, 37 A. 1070. The above recital of the negotiations carried on by the parties and of the final termination thereof, primarily because of the plaintiff's refusal to accede to the defendants' demand for a rezoning of a part of their property, sufficiently establishes inability to agree upon the amount to be paid for the property and satisfies the requirement of the statute. Since it appears that the amount of the purchase price was not the major factor in the breakdown of negotiations, it may be inferred that the limitation imposed by the town council upon the sum to be offered was reasonable. The imposition of the limitation therefore does not require a contrary conclusion. The same holds true as to the negotiations concerning the possible exclusion of the southerly fifty-foot strip of the land. Whatever the plaintiff may have proposed as to taking less land than would accurately satisfy its needs, presumably to obviate the delay incident to condemnation proceedings, the attempt proved unavailing.

It is true, as claimed by the defendants, that author-

ity to condemn is to be strictly construed in favor of the owner and against the condemnor and that it must be strictly pursued. *State* v. *McCook*, 109 Conn. 621, 630, 147 A. 126; *Crawford* v. *Bridgeport*, 92 Conn. 431, 435, 103 A. 125. The statute, however, "should be enforced in such a way as to effectuate the purpose for which it was enacted." 1 Nichols, Eminent Domain (3d Ed.) p. 234. It does not follow, therefore, that the fact of inability to agree is negatived by what was apparently an offer made by the condemnor during the negotiations in an attempt at a compromise which failed. If there could be any doubt that inability to agree did exist in the instant case, it is eliminated by the statements in the letter on behalf of the defendants of February 7, 1949, from the defendants' counsel to the plaintiff's town manager. Referring to the offer made for the entire 8.62-acre tract and to that made for the tract without the 50-foot southerly strip, the letter states: "My clients . . . are not willing to make the substantial sacrifice which an acceptance of either of your offers would entail . . . . [I]n view of our Friday's conversation I gather that any further discussions would be fruitless. If this impression of mine is correct, I venture to express the hope that you will take promptly whatever steps you deem necessary, unless of course the project is being abandoned altogether as my clients earnestly hope will be the case . . . ." The court's conclusion that the necessary preliminary steps were properly taken cannot be disturbed.

In so far as the issue of necessity is concerned, the defendants expressly concede that "the test imposed by the courts is reasonable necessity." The parties agreed that the question to be decided by the trial court was "whether as a matter of fact all of the land proposed to be taken is necessary, and not whether the Town Council acted unreasonably in determining that it was neces-

sary." The defendants contend that the court's conclusion that the taking of all of the 8.62-acre tract is necessary is unwarranted because it is not supported by the facts found. One claim is that a fact essential to establish necessity under the statute is lacking because the town authorities did not formally adopt a specific, detailed plan designating exactly "what part of defendants' land it needed for what purpose." The statute contains no such requirement and no authority is cited in support of the contention. Relying upon the data furnished by the town's educational authorities, the council's vote, incorporating the language of the statute, directed the condemnation of the 8.62-acre tract. The defendants' claim is without merit.

The defendants' primary contention is that no necessity for taking the fifty-foot strip has been established and that without it the entire taking is void. This argument rests upon their interpretation of conflicting evidence as to the proper requisites of playing fields for the games included in the outdoor physical culture curriculum of the school. The court resolved this question of fact in the plaintiff's favor, finding that, while not absolutely essential, it is highly desirable to have full-sized baseball and softball fields, oriented as stated, and that to accomplish this the entire 8.62-acre tract is necessary. Whether this finding can be upset depends upon the meaning of "necessary" as used in § 7175. "'Necessary,' in legislative Acts according the right of eminent domain, does not mean an absolute or indispensable necessity, but only that the taking provided for is reasonably necessary. *Sayre* v. *Orange,* (N. J.) 67 Atl. 933; *Olmsted* v. *Morris Aqueduct,* 47 N. J. L. 311, 329; *M'Culloch* v. *Maryland,* 4 Wheat. (U. S.) 316, 414 [4 L. Ed. 579]." *New Haven Water Co.* v. *Russell,* 86 Conn. 361, 369, 85 A. 636. Tested by this principle, the court's finding must stand. Except

for the claim discussed in the next paragraph, the rest of those advanced by the defendants, in attacking the court's conclusion of necessity, relate to its finding upon questions of fact, which cannot be disturbed.

The further claim is made in the defendants' brief that the lack of proof of necessity for taking the twenty-foot-deep gully at the northwesterly corner of the tract vitiates the court's conclusion. If the defendants placed reliance at the trial upon such a claim, it should have been specifically asserted and should appear as one of their claims of law, like their claim concerning the fifty-foot strip in paragraph 84 of the finding. It is true that the defendants assigned error in this paragraph and claim that its wording is inadequate. A motion to rectify the appeal, however, is the only method by which a change could have been accomplished. Practice Book § 365; Maltbie, Conn. App. Proc. § 141; *Miner* v. *Miner*, 137 Conn. 642, 644, 80 A. 2d 512. That it does not appear that the question was distinctly raised at the trial is sufficient reason for our not considering it. Practice Book § 363; *Malone* v. *Santora*, 135 Conn. 286, 293, 64 A. 2d 51. This aside, the depth of the area with the stream flowing through it and the fact that the expense of effectually filling it to grade would be prohibitive sufficiently indicate that it is of such slight value as to be immaterial. This is confirmed by testimony, elicited by the defendant's counsel on cross-examination of the town engineer of the plaintiff, that the land is "pretty useless" for any purpose.

The court admitted in evidence an evaluation of the Talcott School prepared by the state department of education in May, 1947, for the limited purpose of showing that such a report existed and could have been considered by the town's board of education. The finding states that subsequently this "survey was re-

ferred to by plaintiff and used for the truth of the matter contained therein." The defendants claim that the court erred in relying upon this exhibit as establishing the truth of the statements contained in it. The finding quoted is ambiguous and is open to the construction that it was the plaintiff and not the court who so "used" the exhibit. This interpretation is fortified by the presumption that the trial court used it only for an admissible purpose. *Hygeia Distilled Water Co.* v. *Hygeia Ice Co.*, 70 Conn. 516, 530, 40 A. 534; *Hurlbut* v. *McKone*, 55 Conn. 31, 46, 10 A. 164. The record does not sustain the claim that the court erred. There was admitted in evidence an exhibit containing relevant excerpts from the minutes of the board of education. One of these, under date of September 22, 1949, referred to certain tabulations appearing in the minute book which upon the defendants' objection the plaintiff agreed to take out. Subsequently, the plaintiff called this data to the court's attention and it became evidence considered by the court, notwithstanding the objection which had been made. While technically the court's action may have been erroneous, so far as appears the evidence at most was cumulative. We cannot hold that the court's conduct constituted reversible error.

There is no error.

In this opinion the other judges concurred.