[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiffs, owners of real property in North Canaan, brought this action for a declaratory judgment that the defendant town's acquisition of an easement across their property by condemnation was illegal and, therefore, null and void.
The evidence at trial established that plaintiffs own real estate on North Elm Street in North Canaan for which they received building permits for construction of two buildings in May, 1988. Plaintiffs had planned to construct four buildings on the site and to proceed with the other buildings once they sold 70% of the units in the first two buildings. Certificates of occupancy for the two buildings were issued in March, 1989. In September, 1988 the state Department of Environmental Protection ordered defendant to construct facilities to provide municipal sewers to Patty Lane to hook up to the Canaan Fire District sewage system. The town hired George Adotte, a professional engineer, to prepare necessary engineering plans. Mr. Adotte's preliminary plans showed a possible location of the sewer line along the boundary line of plaintiffs property and that of Robert Gandolfo. However, the placement chosen after discussion with plaintiff Halloran and receipt of a copy of plaintiffs' plans required an easement across plaintiffs' property. Mr. Adotte testified that he proposed a gravity feed system and that he considered the engineering and cost aspects in making his proposal. The proposed alternative along the boundary line would have increased the cost because of the additional pipe required and manhole involved and might not work because of loss of gravitational capacity. In December, 1989, the inland wetlands commission approved the project including the proposed location of the sewer line across plaintiffs' property. The Department of Environmental Protection also approved the plans. On February 9, 1989 a special town meeting passed a resolution authorizing the selectmen to borrow money to fund the project and to apply for and accept grants and to expend appropriations for the sewer project.
After DEP approval was received, town attorney Catherine Roraback was instructed to obtain the necessary easements. First selectman Douglas Humes, Jr. testified that based on discussion with plaintiff Halloran he believed that the easements would not cost the town any money; indeed, the town did not appropriate any money for easements. Attorney Roraback sent CT Page 7844 letters to property owners from whom easements were necessary. The letter to plaintiffs enclosed a map showing the location of the easement sought. Plaintiff Jones testified that he called Attorney Herbert Isaacson and mailed him a copy of the letter and authorized him to act on behalf of the plaintiff partnership. He told Mr. Isaacson that he did not agree with the location of the easement, that he was concerned about the effect of the location on their plans for future construction given changes in wetlands requirements and that he wanted reimbursement for additional expenses. Mr. Isaacson contacted Ms. Roraback to discuss plaintiffs' preference for another location and desire for assurances that there would be no objection to further building as well as $5,000. Attorney Roraback told Attorney Isaacson that a change in location was not possible and that she would need details and documentation to support the $5,000 demand. Attorney Roraback did draft proposed subordination agreements for the bank and Connecticut Light and Power. Mr. Isaacson never supplied any details or documentation to support the $5,000 demand. Attorney Roraback did tell Mr. Isaacson that if plaintiffs would accept $2,500 to settle the matter, she would try to get it. She did obtain authority from the selectmen to offer $2,500. In late May and in June, Attorney Roraback told Attorney Isaacson that if plaintiffs took the $2500, the town would not proceed to condemnation. Attorney Isaacson never indicated plaintiffs would accept that figure.
The minutes of the meeting of the Board of Selectmen on June 5, 1989 note that Attorney Roraback had reported to Selectman Humes that one of the parties (plaintiffs herein) was negotiating for a price for the easement and to request a call for a town meeting to authorize the selectmen to start condemnation of the property. Receipt of a ninety day extension of the May 31 deadline DEP had imposed was also reported. The town meeting was set for June 21. At the special town meeting on June 21, the selectmen were authorized and directed "to institute such proceedings (including condemnation) as may be necessary against Michael Halloran and George W. Jones. . .for the purpose of acquiring temporary and permanent easements across property. . . on the easterly side of North Elm street required for the installation a [sic] maintenance of a sewer line to service homes on Patty Lane. . . ." On June 7, 1989, appraiser Bruce Grannan submitted an appraisal showing the easement to be a "wash" considering the benefits to the property from the sewer line to be greater than the damages to the property from the easement. When Attorney Roraback heard nothing further from Attorney Isaacson regarding the offer of $2,500 the condemnation action was filed. Since the selectmen had no indication that plaintiffs would take $2,500 in exchange for the easement, no resolution authorizing such payment was ever sought. Mr. Jones testified that he, himself, never made a demand of the Town regarding the easement. Plaintiffs did not dispute the condemnation proceeding in court.
General Statutes 48-6 provides that "Any municipal corporation having the right to purchase real estate. . .which has. . .voted to purchase the same shall have power to take or acquire such real estate. . .and if such municipal corporation cannot agree with any owner upon the amount to be CT Page 7845 paid . . . it shall proceed in the manner provided by section 48-12 . . ." The special town meeting of June 21, 1989 directed and authorized the board of selectmen to institute such proceedings as may be necessary to acquire easements across plaintiffs' property. Plaintiffs contend that this vote did not authorize a purchase but only condemnation of the property. The plain language of the motion acted on clearly encompasses both processes. Given the time limitations under which the town was proceeding a resolution covering both eventualities, purchase if possible and condemnation if not, was certainly sensible. The conditions placed by plaintiffs on a voluntary transfer of the necessary easement, primarily assurances with regard to the affect of the easement on future development of the property in light of changes in the wetlands requirements and reimbursement for expenses, including fees unrelated to the easement, make it clear that the parties were unable to agree on the price. Plaintiffs never submitted the documentation or the details to justify the $5,000 "demand," nor did they agree to the proposed $2,500 which the town counsel suggested by way of compromise. See West Hartford v. Talcott,138 Conn. 82, 89 (1951). Attorney Isaacson"s testimony made clear his view that plaintiffs viewed the location of the easement, price and the assurances regarding future buildings as a package. No agreement was possible unless all were addressed. He further testified that with regard to the latter, he did not know who he expected Attorney Roraback to go to or what he was seeking from the town. After the June 21 town meeting, Attorney Roraback testified that she believed she repeated the $2,500 offer since the town selectmen did not want to go to condemnation. When plaintiffs failed to accept or make a counteroffer, the town proceeded to condemnation.
Plaintiffs have failed to sustain their burden of proof. They are not entitled to the declaratory judgment they seek.
SUSCO, J.