## LEO GOLD ET AL. *v.* TOWN OF EAST HADDAM
(SC 18067)

Rogers, C. J., and Norcott, Katz, Palmer and Schaller, Js.

---

Argued October 22, 2008—officially released March 24, 2009

*not* eligible to receive good time credits. See General Statutes §§ 18-7a and 18-100d.

*John S. Bennet*, with whom was *Kenneth J. McDonnell*, for the appellant (defendant).

*Leo Gold* for the appellees (plaintiffs).

*Opinion*

ROGERS, C. J. The plaintiffs, Leo Gold, Joan S. Levy and the executors of the estate of Bernard Manger, Harold Bernstein and Joseph Lieberman, brought this action seeking a permanent injunction barring the defendant, the town of East Haddam, from condemning their property. Specifically, the plaintiffs claimed that the taking was barred because the defendant had not condemned their property within six months of the referendum vote authorizing the condemnation as required by General Statutes § 48-6 (a).[1] The defendant filed a motion for summary judgment claiming that the six month time limitation contained in § 48-6 (a) did not apply to the condemnation because the land was to be used for school purposes and, therefore, the taking was governed by General Statutes § 10-241a, which con-

[1] General Statutes § 48-6 (a) provides: "Any municipal corporation having the right to purchase real property for its municipal purposes which has, in accordance with its charter or the general statutes, voted to purchase the same shall have power to take or acquire such real property, within the corporate limits of such municipal corporation, and if such municipal corporation cannot agree with any owner upon the amount to be paid for any real property thus taken, it shall proceed in the manner provided by section 48-12 within six months after such vote or such vote shall be void."

tains no time limitation.[2] The trial court granted the motion and rendered judgment for the defendant. The plaintiffs appealed to the Appellate Court, which reversed the judgment on the ground that the referendum question authorizing the purchase of the plaintiffs' property, which had been approved by vote of the town meeting, raised a genuine issue of material fact as to whether the property would be used for school purposes. *Gold* v. *East Haddam*, 103 Conn. App. 369, 374–75, 928 A.2d 1234 (2007). This court then granted the defendant's petition for certification to appeal.[3] Because we conclude that there is no genuine issue of material fact that the plaintiffs' land is going to be used for school purposes and for purposes incidental to that use, we reverse the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following undisputed facts, as detailed in the trial

[2] General Statutes § 10-241a provides in relevant part: "Any local or regional school district may take, by eminent domain, land which has been fixed upon as a site, or addition to a site, of a public school building, and which is necessary for such purpose or for outbuildings or convenient accommodations for its schools, upon paying to the owner just compensation, provided such taking is with the approval of the legislative body of the town, and in the case of regional school districts, subject to the provisions of section 10-49a, and in each case in accordance with the provisions of sections 8-129 to 8-133, inclusive. The board, committee or public officer empowered to acquire school sites in such school district shall perform all duties and have all rights prescribed for the redevelopment agency in said sections with respect to such taking. . . ."

[3] We granted certification to appeal limited to the following issues: (1) "Did the Appellate Court err in its finding that the intent of the voters is a question of fact rather than a question of law to be determined by the language approved by the voters in a town meeting?"; and (2) "Did the Appellate Court err in failing to find that uses which are incidental and secondary to the primary public school purpose do not require the taking to occur within six months of the referendum vote?" *Gold* v. *East Haddam*, 285 Conn. 901, 902, 938 A.2d 592 (2007). Our review of the record and the briefs submitted by the parties persuades us, however, that the question on appeal should be reframed as follows: Did the Appellate Court properly determine that there was a genuine issue of material fact as to whether the plaintiffs' property would be used for school purposes? See *Pekera* v. *Purpora*, 273 Conn. 348, 354 n.8, 869 A.2d 1210 (2005).

court's memorandum of decision, and procedural history. "[The plaintiffs] were . . . the owners of real property in the town of East Haddam. On June 17, 2004, the [defendant] held a special meeting for the purpose of considering and discussing the acquisition by purchase or eminent domain of the plaintiffs' property. On June 24, 2004, the governing body of the [defendant] by town meeting voted to acquire the plaintiffs' property. The referendum vote was, in relevant part, on the question of: 1. Shall the [defendant] appropriate $24,500,000 for the New Middle School Project including, but not limited to, (a) the acquisition by purchase or eminent domain of approximately 226 . . . acres of real property located off Clark Gates Road, East Haddam on the following parcels: Map # 74, Lot 3, Map # 73, Lot 20-1, Map # 74, Lot 009A, provided, however approximately 30 . . . acres be used for the New Middle School Project, approximately 50 . . . acres be used for general purposes and the remaining real property of approximately 146 . . . acres be designated as open space, (b) the construction of a new middle school of approximately 96,000 square feet to house grades [four through eight], (c) the construction of parking areas and drives, ball fields and soccer fields, (d) site improvements and (e) all alterations, repairs and improvements in connection therewith . . . and authorize the Board of Selectmen to acquire such real property. On or about January 6, 2006, the [defendant] filed a statement of compensation in the Superior Court . . . by which it seeks to take by condemnation the plaintiffs' real property.[4]

"By complaint dated February 6, 2006, the plaintiffs filed this action, claiming that the defendant failed to

---

[4] The statement of compensation provided that "[o]n June 24, 2004, the governing body of the [defendant] duly voted to acquire the [plaintiffs'] property and found that the convenience and necessity of the [defendant] requires the same for construction of a school."

commence the condemnation proceeding within six months after the vote authorizing the acquisition of the property as required by § 48-6 and that the vote, therefore, was void. The defendant subsequently filed a motion for summary judgment, claiming that . . . § 10-241a, which does not have a time limitation, governs the acquisition of property by condemnation for school purposes, and, because the defendant was taking the plaintiffs' property to build a school, the six month time limitation did not apply. The plaintiff[s] filed a cross motion for summary judgment, claiming that because the voters approved the land acquisition not only for school purposes but also for other municipal and open space purposes, § 48-6, and not § 10-241a, applied."[5] (Internal quotation marks omitted.) Id., 370–72.

The Appellate Court also found that "[i]n support of its motion for summary judgment, the defendant presented affidavits from James Ventres, the defendant's land use administrator, and Bradley Parker, the first selectman. In his affidavit, Ventres stated that the plaintiffs' property was sought for 'the sole purpose of development of the middle school facility project and accessories thereto.' He stated that the project, as currently planned, would consume approximately sixty-one acres, including building location, access roadways, necessary sloping and fill along the access ways at the school site, and for septic fields and playing fields. He stated that another approximately twenty-two acres constituted land that might be developed into additional playing fields or related school facilities in the future. Ventres stated that 'the entire balance of the site is either not subject to development or is substantially

[5] In support of their motion for summary judgment, the plaintiffs presented copies of the statement of compensation, the notice of a special town meeting and the text of the referendum vote.

constrained by the location of wetlands, ponds, steep slopes and other similar constraints.'[6]

"In his affidavit, Parker reiterated that the only planned use for the plaintiffs' property was the school project. Parker explained that '[t]he [r]esolution put before the voters . . . by [r]eferendum describes three elements of the property to be acquired for purposes of the school project simply as a way to inform the voters . . . of how the property acquired would be adapted to the use for the public school project and future expansion and buffer of adjacent neighborhoods.' "[7] Id., 373–74.

"The [trial] court found that the plaintiffs' property was being acquired solely for school purposes and that the time limitation of § 48-6 therefore did not apply. Accordingly, the court granted the defendant's motion for summary judgment and denied the plaintiffs' motion for summary judgment." Id., 372.

The plaintiffs appealed from the judgment of the trial court to the Appellate Court claiming that the trial court improperly had found that there was no genuine issue of material fact as to whether the condemned land would be used solely for school purposes. Id., 370. The Appellate Court concluded that, "[a]lthough the affidavits submitted by the defendant support the claim that

---

[6] Ventres attached an aerial photograph of the property to his affidavit that showed the location of the proposed school building, the limits of the other proposed construction, and the location of wetlands, wetlands buffer and steeply sloped land.

[7] Parker also stated in his affidavit that he had "sought and obtained [the] permission of the [plaintiffs] to enter upon [their] property for purposes of testing the site for development of a public school building project." He attached to the affidavit a copy of an authorization to inspect and examine the property that the named plaintiff, Gold, had signed on March 15, 2004. The authorization provided in relevant part: "The [defendant] has requested permission to enter upon your property referenced above, for purposes of inspection and examination for possible location of a public school building. . . ."

it sought the plaintiffs' property solely for the school project, the language of the referendum question submitted to the voters, when viewed in a light most favorable to the plaintiffs, suggests that only a portion of the property was being taken for school purposes and that other portions were being taken for general purposes or designated as open space. The affidavits, read together with the referendum notice, create a factual question as to whether the taking was intended solely for school purposes or also included general municipal purposes." Id., 374. Accordingly, the Appellate Court reversed the judgment of the trial court. Id., 375.

This certified appeal followed. The defendant claims that the Appellate Court improperly: (1) concluded that the intent of the voters is a question of fact that may be considered by the trial court in determining the meaning of the referendum language; and (2) failed to determine that uses that are incidental and secondary to the use of a condemned property for school purposes do not come within § 48-6 (a). The plaintiffs dispute the defendant's claims and further contend that, because the denial of a motion for summary judgment is not a final judgment, this court lacks jurisdiction over the appeal. We conclude that this court has jurisdiction over the appeal. We further conclude that, regardless of whether there was ambiguity in the referendum question presented to the voters, there was no genuine issue of material fact that the entire condemned property actually was to be used for school purposes pursuant to § 10-241a. Accordingly, we reverse the judgment of the Appellate Court.

I

Because it implicates this court's subject matter jurisdiction, we first address the plaintiffs' claim that the judgment of the Appellate Court reversing the trial court's summary judgment rendered in favor of the

defendant was not a final judgment. See *State* v. *Curcio*, 191 Conn. 27, 30, 463 A.2d 566 (1983) ("[b]ecause our jurisdiction over appeals . . . is prescribed by statute, we must always determine the threshold question of whether the appeal is taken from a final judgment before considering the merits of the claim"). The plaintiffs claim that, because the denial of a motion for summary judgment is not an appealable final judgment; see *Hopkins* v. *O'Connor*, 282 Conn. 821, 828, 925 A.2d 1030 (2007); and because the judgment of the Appellate Court amounted to a denial of the motion for summary judgment and put this case in the same procedural posture that it would have been in if the trial court had denied the defendant's motion for summary judgment, the judgment of the Appellate Court is not an appealable final judgment. We disagree.

Certified appeals to this court from the judgment of the Appellate Court are authorized by General Statutes § 51-197f, which provides in relevant part: "Upon final determination of any appeal by the Appellate Court, there shall be no right to further review except the Supreme Court shall have the power to certify cases for its review upon petition by an aggrieved party or by the appellate panel which heard the matter and upon the vote of three justices of the Supreme Court so to certify and under such other rules as the justices of the Supreme Court shall establish. . . ." It is clear that the matter before the Appellate Court was an appeal, that the judgment of the Appellate Court reversing the judgment of the trial court was a final determination of the appeal and that the defendant was aggrieved by the Appellate Court's judgment. Accordingly, we conclude that this court has jurisdiction over the appeal under § 51-197f. See *Provencher* v. *Enfield*, 284 Conn. 772, 775–77, 936 A.2d 625 (2007) (this court granted certification to appeal from judgment of Appellate Court reversing trial court's summary judgment); *Krevis* v.

*Bridgeport*, 262 Conn. 813, 814, 817 A.2d 628 (same), on remand, 80 Conn. App. 432, 835 A.2d 123 (2003), cert. denied, 267 Conn. 914, 841 A.2d 219 (2004).

II

The defendant next claims that the Appellate Court improperly determined that there was a genuine issue of material fact as to whether the plaintiffs' land will be used for school purposes.[8] We agree.

"The standard of review of a trial court's decision to grant a motion for summary judgment is well established. Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Practice Book § [17-49]. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of mate-

---

[8] Although the plaintiffs made a cursory argument in their memorandum to the trial court in support of their motion for summary judgment and in opposition to the defendant's motion for summary judgment that § 48-6 (a) applies to the condemnation of property for school purposes, neither the trial court nor the Appellate Court addressed that question. Rather, both courts assumed that, if the condemned property was to be used solely for school purposes, § 48-6 (a) would not apply. See *Gold* v. *East Haddam*, supra, 103 Conn. App. 372. Without formally raising the issue as an alternate ground for affirming the judgment of the Appellate Court, the plaintiffs, in their brief to this court, appear to renew their claim that § 48-6 (a) applies to the condemnation of property for school purposes. Because the claim was inadequately briefed, both at trial and on appeal to this court, we decline to address it. See *State* v. *Canales*, 281 Conn. 572, 579, 916 A.2d 767 (2007) (this court will not review claims not distinctly raised at trial); *State* v. *Clark*, 255 Conn. 268, 281 n.30, 764 A.2d 1251 (2001) ("[c]laims on appeal that are inadequately briefed are deemed abandoned" [internal quotation marks omitted]).

rial fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]. . . . Requiring the nonmovant to produce such evidence does not shift the burden of proof. Rather, it ensures that the nonmovant has not raised a specious issue for the sole purpose of forcing the case to trial. See *Farrell* v. *Farrell*, 182 Conn. 34, 39, 438 A.2d 415 (1980) ([i]ndeed, the whole summary judgment procedure would be defeated if, without any showing of evidence, a case could be forced to trial by a mere assertion that an issue exists)." (Citations omitted; internal quotation marks omitted.) *Great Country Bank* v. *Pastore*, 241 Conn. 423, 435–36, 696 A.2d 1254 (1997).

In determining whether the trial court properly rendered summary judgment in favor of the defendant on the ground that the six month time limitation contained in § 48-6 (a) does not apply to the condemnation of the plaintiffs' property, the dispositive question is whether there is a genuine issue of material fact as to whether the condemned property "has been fixed upon as a site . . . of a public school building" under § 10-241a. In addressing this question, it is important to keep in mind that the plaintiffs make no claim that their land will not, in fact, be used for school purposes.[9] Rather, they

[9] The dissent disagrees with this conclusion and argues that the plaintiffs' claim is that part of the condemned property actually will be used for municipal purposes that are not related to the school. It appears to us, however, that the plaintiffs are claiming *only* that the *referendum question* is unclear as to whether the entire property will be used for school purposes. Each of the plaintiffs' affirmative assertions that the property will be used for nonschool purposes is based on the language of the referendum. A conclusion either that the referendum question was unclear or that it clearly indicated that the defendant intended to use the property for nonschool purposes would not necessarily mean, however, that the purpose for which the defendant *actually* intends to use the property is unclear and that a

claim that "[t]*here is nothing in the [referendum] question* which would lead one to believe that 'general purposes' meant 'general school purposes.'" (Emphasis added.) They further claim that the referendum question "approved by the voters calls for three uses of the property and does not permit the [defendant] to change the language so as to limit the taking to school purposes only." If the undisputed evidence adduced by the defendant established conclusively that the site is in fact going to be used for school purposes, however, a lack of clarity in the referendum question would not alter that fact.

---

trial is therefore required to establish that purpose. Rather, it seems likely that either conclusion would result in a determination that the referendum question was void ab initio, a claim that the plaintiffs did not raise before the trial court and have not raised on appeal. See *Leck* v. *Michaelson*, 111 Ill. 2d 523, 530–31, 491 N.E.2d 414 (1986) (referendum was vague and ambiguous and was therefore invalid under state constitutional provision authorizing municipal referendum). Accordingly, we decline to address that question. See *Konigsberg* v. *Board of Aldermen*, 283 Conn. 553, 597 n.24, 930 A.2d 1 (2007) ("[a]s we have observed repeatedly, [t]o review [a] claim, which has been articulated for the first time on appeal and not before the trial court, would result in a trial by ambuscade of the trial judge" [internal quotation marks omitted]); *Jalowiec Realty Associates, L.P.* v. *Planning & Zoning Commission*, 278 Conn. 408, 418, 898 A.2d 157 (2006) (declining to review claim because defendants did not raise it adequately before trial court).

The dissent also argues that the affidavits of Parker and Ventres themselves support a conclusion that the plaintiffs' land will not be used exclusively for school purposes. In support of this claim, it points out that Parker stated that "it was determined that acquisition of *most* of the [plaintiffs' property] would be necessary for purposes of the planned school project . . . ." (Emphasis added.) In light of Parker's subsequent statement that "[t]he acquisition of the property of the [p]laintiffs is for a single school project, and no other anticipated projects," however, Parker could not have meant that some of the plaintiffs' property would be used for nonschool purposes. Rather, he presumably meant either that the defendant was not required to condemn all of the plaintiffs' property or that, although not all of the plaintiffs' property was absolutely necessary for the school, enough of it was necessary that it would have made no sense to leave the remainder to the plaintiffs. Indeed, as we have indicated, the plaintiffs themselves make no claim that the affidavits support their position. Instead, they claim only that "[t]he *notice of the special town meeting and the referendum question* make it clear that this was to be a taking for multiple purposes." (Emphasis added.)

We conclude that there is no genuine issue of material fact as to whether the plaintiffs' land actually will be used for school purposes. First, the language of the referendum question itself indicates that the development of a school is the intended use of the property. Although, taken as a whole, the language is not a model of clarity, the first sentence of the referendum question provides in relevant part: "Shall the [defendant] appropriate $24,500,000 *for the New Middle School Project including, but not limited to, (a) the acquisition by purchase or eminent domain of approximately 226 . . . acres of real property* . . . ?" (Emphasis added.) This sentence, standing alone, clearly indicates that both the entire appropriation and the entire property would be used for school purposes. See *Hasselt* v. *Lufthansa German Airlines*, 262 Conn. 416, 425, 815 A.2d 94 (2003) (term "include" defined as "to . . . comprise as a part of a whole" [internal quotation marks omitted]); *Mahoney* v. *Lensink*, 213 Conn. 548, 569, 569 A.2d 518 (1990) ("the word include suggests the containment of something as a constituent, component, or subordinate part of a larger whole" [internal quotation marks omitted]). The remainder of the question is divided into five subparts, identified by the letters (a) through (e). Part (a) describes how different portions of the entire property will be used, and parts (b) through (e) describe the improvements that will be made on the property, all of which relate to school purposes. Although part (a) states: *"provided, however* . . . [that] approximately [fifty] . . . acres be used for general purposes and the remaining real property of approximately 146 . . . acres be designated as open space"; (emphasis added); the use of land for general purposes and for open space is not inherently *inconsistent* with its use for school purposes. Rather, in the context of the entire referendum question, the language most reasonably can be understood to mean general school related purposes and open space surrounding the school.

Second, the affidavits submitted by the defendant in support of its motion for summary judgment establish conclusively that the condemned land will be used for school purposes.[10] Both Parker and Ventres, the defendant's first selectman and land use administrator, respectively, stated unequivocally that the entire site would be devoted to the middle school project. These representations were supported by the statement of compensation and by the authorization to inspect and examine the plaintiffs' property, both of which indicated that the defendant intended to use the property as the site of a public school building.[11] See footnotes 4 and 7 of this opinion. The statements also were supported by the aerial photograph of the property, which shows that the great majority of the condemned land that will not be used for actual construction is unbuildable wetlands, wetlands buffer and steep slope. See footnote 6 of this opinion. The plaintiffs submitted no evidence in support of their opposition to the defendant's motion for summary judgment that would cast any doubt on the statements made in these affidavits. See *Great Country Bank* v. *Pastore*, supra, 241 Conn. 435–36 ("a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact *together with the evidence*

---

[10] Contrary to the dissent's claim, we do not rely on the affidavits to interpret a legislative act. See footnote 9 of this opinion. Rather, we rely on them to determine whether there is a genuine issue of material fact as to whether the defendant actually intends to use the plaintiffs' property for school purposes, as we are authorized to do by Practice Book § 17-45, which provides in relevant part that "[a] motion for summary judgment shall be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like. . . ."

[11] As we have indicated, the named plaintiff, Gold, signed the authorization to inspect and examine the plaintiffs' property on March 15, 2004, *before* the referendum vote. This belies any suggestion that the defendant changed its mind about how it would use the property after the six month limitation period of § 48-6 (a) expired.

*disclosing the existence of such an issue"* [emphasis added; internal quotation marks omitted]).

To the extent that the plaintiffs claim that, as a matter of law, "general purposes" and "open space" constitute incidental or secondary uses that cannot be considered part of a "site . . . of a public school building" under § 10-241a, even if they are related to the school, we disagree. Again, the affidavits clearly demonstrate that the uses for general purposes and open space were uses associated with the proposed middle school, such as lawns, roads, septic systems, playing fields and open space between the school and the surrounding area. It would be entirely unrealistic to construe the phrase "site . . . of a public school building" as used in § 10-241a to be limited to the footprint of the school building and related construction and to exclude land required for the other uses described in the affidavits.[12] Accordingly, because there is no genuine issue of material fact that the condemned land will be used for school purposes, the taking was governed by § 10-241a, which contains no time limitation.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to render judgment affirming the judgment of the trial court.

---

[12] We recognize that this court has held that land may be condemned under § 10-241a, formerly General Statutes § 7175, only if it is "reasonably necessary" for school purposes. See *West Hartford* v. *Talcott*, 138 Conn. 82, 91, 82 A.2d 351 (1951). As the defendant in the present case points out, however, the plaintiffs "do not complain that the [defendant] cannot acquire their property for public school use [or] that the real property taken is in excess of the need." Thus, to the extent that the dissent suggests that it was unreasonable or unnecessary for the defendant to take 146 acres of land to serve as a buffer for the school, no such claim was raised by the plaintiffs. We further note that, if such a claim had been raised, the appropriate remedy would not have been to void the taking as untimely under § 48-6 (a), as the plaintiffs in the present case request, but to void it as unauthorized by § 10-241a.

In this opinion NORCOTT, KATZ and PALMER, Js., concurred.

SCHALLER, J., dissenting. I respectfully submit that summary judgment in favor of the defendant, the town of East Haddam, on the basis of the application of General Statutes § 10-241a,[1] is not appropriate. "A condemnation is valid if, *at the time of the taking*, the government's exercise of eminent domain served a valid statutory purpose." (Emphasis added.) *Heirs of Guerra* v. *United States*, 207 F.3d 763, 767 (5th Cir.), cert. denied, 531 U.S. 979, 121 S. Ct. 428, 148 L. Ed. 2d 436 (2000). Section 10-241a provides in relevant part that "[a]ny local or regional school district may take, by eminent domain, land which has been fixed upon as a site, or addition to a site, of a public school building, and which is necessary for such purpose or for outbuildings or convenient accommodations for its schools . . . ." As a threshold matter, therefore, it is unquestionable that, in order for a taking to be valid under § 10-241a, the land sought to be condemned must have a school purpose. As the trial court, the Appellate Court, and the majority opinion observe, the critical issue presented by this case is whether the defendant's taking of the plaintiffs'[2] land by eminent domain was entirely for school purposes. In the procedural context of a motion for summary judgment, the question is whether a genuine issue of material fact exists as to whether the taking, which was authorized by a referendum vote,[3]

[1] See footnote 2 of the majority opinion.

[2] The plaintiffs are Leo Gold, Joan S. Levy and the executors of the estate of Bernard Manger, Harold Bernstein and Joseph Lieberman.

[3] For ease of reference, I reprint the entire referendum question: "Shall the [defendant] appropriate $24,500,000 for the New Middle School Project including, but not limited to, (a) the acquisition by purchase or eminent domain of approximately 226 . . . acres of real property located off Clark Gates Road, East Haddam on the following parcels: Map # 74, Lot 3, Map # 73, Lot 20-1, Map # 74, Lot 009A, provided, however approximately 30 . . . acres be used for the New Middle School Project, approximately 50 . . . acres be used for general purposes and the remaining real property of

was entirely for school purposes. I believe that there is a genuine issue of fact as to that critical issue. Accordingly, I dissent.

The plaintiffs argue that the referendum authorized takings for *two* valid statutory purposes: a school purpose and other municipal purposes.[4] Specifically, the plaintiffs argue that the "general purposes" and "open space" portions of the taking are *not* for school purposes at all, but represent separate and additional municipal purposes. Accordingly, because those portions were not taken for school purposes, the plaintiffs argue that the taking of those portions must have been authorized by General Statutes § 48-6 (a),[5] which refers to municipalities' general eminent domain power. If the plaintiffs are correct, then § 48-6 (a) explicitly required the defendant to commence condemnation proceedings within six months.[6] In that case, the portions of the

approximately 146 . . . acres be designated as open space, (b) the construction of a new middle school of approximately 96,000 square feet to house grades [four through eight], (c) the construction of parking areas and drives, ball fields and soccer fields, (d) site improvements and (e) all alterations, repairs and improvements in connection therewith, as well as engineering, architectural and temporary and permanent financing costs, authorize the issuance of bonds and notes in the amount of $24,500,000 to finance such appropriation and authorize the Board of Selectmen to acquire such real property."

[4] The majority asserts that "the plaintiffs make no claim that their land will not, in fact, be used for school purposes." I disagree. While the plaintiffs concede that approximately thirty acres will be used for a school purpose, as the referendum expressly reflects, the plaintiffs make no concession that the other approximately 196 acres will be used for a school purpose. Instead, the plaintiffs affirmatively assert that those acres will *not* be used for a school purpose but, rather, will be used for other municipal purposes.

[5] General Statutes § 48-6 (a) provides: "Any municipal corporation having the right to purchase real property for its municipal purposes which has, in accordance with its charter or the general statutes, voted to purchase the same shall have power to take or acquire such real property, within the corporate limits of such municipal corporation, and if such municipal corporation cannot agree with any owner upon the amount to be paid for any real property thus taken, it shall proceed in the manner provided by section 48-12 within six months after such vote or such vote shall be void."

[6] This is a critical point. The plaintiffs do not argue that the defendant's taking, including the taking of open space, was not authorized by law but,

taking authorized under § 48-6 (a) would become void *only* if the defendant failed to act within the statutorily proscribed time period, which the defendant failed to do. Under the plaintiffs' argument, they can show that summary judgment was improper in this case if they can show that a genuine issue of material fact exists as to whether some portions of the taking were not for a school purpose at all, but for a separate and additional municipal purpose, thus implicating the provisions of § 48-6 (a).[7]

The defendant does not dispute that more than six months had expired between the time of the referendum vote and the time that the defendant began condemnation proceedings against the plaintiffs.[8] On appeal, the defendant claims that, because the taking was entirely for school purposes, the taking was authorized by § 10-241a, which it argues does not limit the time within which the defendant must proceed with condemnation proceedings. As a threshold matter, therefore, the defendant must demonstrate that, as a matter of law, the taking was done *entirely* under the authority of § 10-241a.

One additional point not discussed in the majority opinion is significant. Although the defendant would

rather, that because the taking was not entirely for school purposes, the defendant was required to act within the six month time limit set forth in § 48-6 (a), which the defendant indisputably failed to do.

[7] To be sure, there will be circumstances in which a portion of a school taking will serve two purposes. For example, a baseball field associated with new school construction might serve both a school purpose, and also serve a broader purpose, such as providing a field for an adult softball league. This case does not present us with the question of which reason should take precedence, if such a distinction matters, because the plaintiffs claim that there is no associated school purpose for the portions taken for general purposes and open space.

[8] The referendum vote occurred on June 24, 2004. Approximately eighteen months later, on January 5, 2006, the defendant filed its statement of compensation with the clerk of the superior court.

have us assume that it has consistently carried out this condemnation pursuant to § 10-241a, that is an open question. Neither the statement of compensation nor the language of the question presented by the referendum vote refer to either §§ 10-241a or 48-6. The defendant first asserted that it acted pursuant to § 10-241a in its answer to the plaintiffs' complaint, which, of course, it had to assert because the six month time period applicable to takings pursuant to § 48-6 had already expired. Accordingly, it is unclear whether the defendant *initially* acted pursuant to § 10-241a or § 48-6 or both.[9]

Before turning to a review of the evidence submitted to the trial court, I note two other important principles of law. First, in the context of a motion for summary judgment, the evidence must be viewed *in the light most favorable to the nonmoving party*, in the present case, the plaintiffs. *Stearns & Wheeler, LLC* v. *Kowalsky Bros., Inc.*, 289 Conn. 1, 7, 955 A.2d 538 (2008). Second, it is well settled that the "authority to condemn is to be *strictly construed in favor of the owner* and against the condemner . . . ." (Emphasis added.) *West Hartford* v. *Talcott*, 138 Conn. 82, 90, 82 A.2d 351 (1951).

In this case, we are presented with an unusual evidentiary situation in which the plaintiffs submitted to the trial court the question that was the subject of the referendum vote, which constitutes a municipal *legislative* act with special legal significance that cannot be overlooked,[10] as their evidence that portions of the tak-

---

[9] I also observe that the defendant initially could have acted pursuant to General Statutes § 48-5, which grants a town the same powers, and subjects the town to the same regulations, as school districts when taking land for school purposes.

[10] The term "referendum" in this context generally means "[t]he determination of questions as to certain existing or proposed legislation by reference to a vote of the people, employed in determining questions covering wide ranges, among the more general of which are . . . the incurring of municipal indebtedness." Ballentine's Law Dictionary (3d Ed. 1969).

ing are not for school purposes. The defendant, on the other hand, takes an approach that is internally inconsistent. It argues, on the one hand, that we must determine the purpose of the taking from the text of the referendum question. On the other hand, the defendant submitted to the trial court the affidavits of Bradley Parker, the defendant's first selectman, and James Ventres, the defendant's land use administrator, both of whom purport to assert, as individuals, that the entire taking was for school purposes. Although I agree with the defendant's first argument that the appropriate determination must be made on the basis of the text of the referendum question, it is clear to me that the result is not at all what the defendant asserts.

In determining whether the purpose of the taking was entirely for a school purpose, or included additional municipal purposes, I turn first to the text of the referendum question; see footnote 3 of this opinion; which provides in relevant part that the defendant shall "appropriate $24,500,000 for *the New Middle School Project* including, but not limited to . . . the acquisition . . . of approximately 226 . . . acres of [the plaintiffs'] property . . . provided, however approximately 30 . . . acres be used for *the New Middle School Project*, approximately 50 . . . acres be used for *general purposes* and the remaining real property of approximately 146 . . . acres be designated as *open space* . . . ." (Emphasis added.) It is readily apparent from the text that only approximately thirty acres have been set aside for the New Middle School Project. My conclusion relies on the fact that, throughout the text of the referendum question, the defendant, by capitalizing the term "New Middle School Project," treated that phrase as a term of art and, by so doing, made it clear that only approximately thirty acres will be used for the actual school related portion of the project. It is unknown, moreover, from the text of the referendum

question, whether the approximately fifty acres for general purposes and the approximately 146 acres for open space are in any way related to a school purpose.

The phrase "general purposes" in the referendum question is by its very nature ambiguous and cannot, as a matter of law, be said to apply exclusively to a school purpose, as opposed to another nonschool related municipal purpose. The text of the notice of referendum, however, which also was submitted to the trial court, uses the more specific phrase "general *municipal* purposes"; (emphasis added); rather than general purposes. Significantly, the term "municipal purposes" is the identical term used for takings under § 48-6 (a). See footnote 5 of this opinion. Accordingly, rather than resolving the lingering ambiguity in the defendant's favor, the notice of referendum, which was required by law[11] and was posted prior to the actual referendum vote, supports the contention that a genuine issue of fact exists as to the purpose of the taking.[12]

More revealing, however, is the portion of the referendum question regarding the designation of approximately 146 acres as open space. The term "open space"

[11] General Statutes § 7-9c provides in relevant part: "Unless otherwise provided by law, a referendum on any question may be held at such hours as is provided in section 7-9b and on such date as the legislative body of the political subdivision holding such referendum shall determine pursuant to the provisions of the local charter, special act or home rule ordinance or not earlier than the thirtieth day following the day upon which the municipal clerk, upon instruction from the legislative body, *issues a warning* therefor by publishing a notice thereof in a newspaper having a general circulation in the municipality. . . ." (Emphasis added.)

[12] The notice of referendum provides that "approximately [fifty] . . . acres [would] be used for general *municipal* purposes," whereas the referendum question provides that "approximately [fifty] . . . acres [would] be used for general purposes . . . ." (Emphasis added.) On appeal, the defendant does not explain why the term "municipal," as used in the notice of referendum, was removed from the final referendum question. To my mind, this seems to indicate that prior to the vote, the defendant envisioned that some portion of the land could be developed in the future for *municipal* purposes.

has a particular meaning in our state's legal nomenclature[13] and nothing in that meaning would suggest, as a matter of law, a school purpose. General Statutes § 12-107e (a),[14] which codifies the process for classifying land as open space land, is also instructive. Section 12-107e (a) provides in relevant part that a planning commission may "designate" land as open space land "provided such designation is approved by a majority vote of the legislative body of such municipality. . . ." In the present case, the text of the referendum question provides that "the remaining real property of approximately 146 . . . acres be *designated* as open space." (Emphasis added.) The defendant's choice of the phrase *designate as open space*, a phrase with a particular legal meaning, and the submission of such designation to a municipal vote, is a strong indication that the designation of approximately 146 acres as open space was a result in and of itself, and one that does not, at least as a matter of law, relate to a school purpose. In summary, the ambiguous text of the referendum question establishes a genuine issue of material fact as to whether this condemnation is entirely for school purposes, or whether it includes other general municipal purposes, including the designation of open space, which would, as the plaintiffs argue, implicate § 48-6 (a).

---

[13] General Statutes § 12-107b (3) defines " 'open space land' " as "any area of land, including forest land, land designated as wetland under section 22a-30 and not excluding farm land, the preservation or restriction of the use of which would (A) maintain and enhance the conservation of natural or scenic resources, (B) protect natural streams or water supply, (C) promote conservation of soils, wetlands, beaches or tidal marshes, (D) enhance the value to the public of abutting or neighboring parks, forests, wildlife preserves, nature reservations or sanctuaries or other open spaces, (E) enhance public recreation opportunities, (F) preserve historic sites, or (G) promote orderly urban or suburban development . . . ."

[14] General Statutes § 12-107e provides in relevant part: "(a) The planning commission of any municipality in preparing a plan of conservation and development for such municipality *may designate upon such plan areas which it recommends for preservation as areas of open space land, provided such designation is approved by a majority vote of the legislative body of such municipality.* . . ." (Emphasis added.)

Trial proceedings would give the parties the opportunity to prove whether the areas taken for general purposes and open space were taken for school purposes as defined by law or, instead, were in addition to the area specifically designated for school purposes. The plaintiffs, for example, could point to extratextual sources such as the minutes of the school building committee's public hearing or the special town meeting called prior to the referendum vote, which are akin to the type of legislative history we routinely rely on to interpret the legislative acts of our General Assembly. *Kelly* v. *New Haven*, 275 Conn. 580, 611 n.33, 881 A.2d 978 (2005).

As noted previously in this dissenting opinion, the defendant submitted in the summary judgment proceedings the affidavits of Parker and Ventres, which purport to establish that the general purposes and open space portions, as designated in the referendum, were for a school purpose. At the outset, I make the following observations. First, the submission of these affidavits is in conflict with the defendant's principal argument that "[the] statements of [the] selectmen . . . board of finance, zoning commission or any other agency which may have considered the matter, simply do not bear upon the court's review." Second, for purposes of interpreting a legislative act, I am unaware of any authority for relying on statements by an individual that were made *subsequent* to the enactment of that legislative act.[15] Rather, in the area of eminent domain, it is the purpose *at the time of the taking* that is relevant; see *Heirs of Guerra* v. *United States*, supra, 207 F.3d 767; not an after-the-fact justification. Finally, even if it were appropriate to rely on postenactment statements, such

---

[15] This would be akin to relying on the statements of a state legislator, made after a vote, to interpret a state statute—an action we have never condoned. This assertion excludes circumstances when the statements are made in the context of a subsequent amendment to the original legislation, a circumstance not presented by the facts of this case.

as the affidavits submitted by the defendant, to interpret the referendum question, it would not alter the ultimate conclusion, namely, that summary judgment is not appropriate in this case.

According to Ventres' affidavit, approximately sixty-one acres will be utilized for the actual school building, roadways, ball fields and septic fields, and an additional 22.5 acres will be set aside for future expansion of playing fields and related school facilities. According to Ventres, therefore, the defendant intends to use only approximately eighty acres for school purposes. Even crediting Ventres' statements, the taking also includes approximately 146 acres of open space.[16] The defendant's affidavits do not support the proposition that the open space is for a school purpose. Ventres statement, which was made *after* the crucial referendum vote, implicitly concedes that approximately 146 acres will not be used for school purposes. The affidavits indicate merely that the defendant took the open space because it was substantially nondevelopable or had difficult access.[17] While these may be *reasons* for taking the open space, they do not address the statutory test, namely, whether that portion of the taking was for a school purpose. Furthermore, in addition to Ventres' implicit concession that the entire parcel is not for school purposes, Parker explicitly conceded the point when he

---

[16] Because Ventres' affidavit describes the open space land as nondevelopable, it is clear that the approximately eighty acres that he describes for the buildings and future expansion consist of the thirty acre and the fifty acre portions described in the referendum. Thus, it is clear that the remaining land consists of approximately 146 acres of open space.

[17] Ventres' affidavit indicates that the balance of the land, that is, the portion other than the approximately eighty acres, is "either not subject to development or substantially constrained by the location of wetlands, ponds, steep slopes and other similar constraints." The defendant, relying on that assessment, argued in its memorandum in support of its motion for summary judgment that by not taking the open space it "would have left the owners with portions of their property with no access or very difficult access and would have left only property which is substantially nondevelopable due to the existence of wetlands, ledges and steep slopes."

stated that "it was determined that acquisition of *most* of the [plaintiffs' property] . . . would be necessary for purposes of the planned school project . . . ." (Emphasis added.) On the basis of this concession alone, namely, that some portions of the taking were *not* for a school purpose, I believe that the plaintiffs deserve the opportunity to present evidence in support of their position at trial rather than having that opportunity foreclosed by summary judgment.[18]

In reaching a different conclusion, the defendant and the majority argue that, because the first sentence of the referendum question mentions only an appropriation for the New Middle School Project and no other projects, *every* item that follows is also entirely for the school project. I cannot agree that this court can properly consider only a selected portion of the text of a municipality's legislative action to determine its meaning. See, e.g., *Broadnax* v. *New Haven*, 270 Conn. 133, 161, 851 A.2d 1113 (2004) (in interpreting town charter or municipal ordinance, effect should be given to every section, paragraph, sentence, clause and word in instrument and related laws). The majority further argues that it would be "entirely unrealistic" to construe § 10-241a to limit towns to "the footprint of the school building and related construction and to exclude land required for the other uses" that the defendant described in its affidavits. As the majority observes, those other uses consisted of the lawns, roads, septic systems, playing fields and open space between the school and the surrounding area. Although I agree, of course, with this aspect of the majority's interpretation

---

[18] Regardless of whether the plaintiffs have claimed that the affidavits support their position; see footnote 9 of the majority opinion; the affidavits do, in fact, support the plaintiffs' position. Construing any ambiguity in Parker's affidavit to support the defendant's position does not adhere to the directive to construe the evidence in the light most favorable to the nonmoving party. *Stearns & Wheeler, LLC* v. *Kowalsky Bros., Inc.*, supra, 289 Conn. 7.

of § 10-241a, I cannot agree with the application of that statement to the facts of this case.

In essence, the majority seems to suggest that the approximately thirty acres designated for the New Middle School Project, which the plaintiffs do *not* dispute as related to school purposes, would restrict the defendant to the "footprint of the school building" and would exclude the other related uses. That argument, in my view, represents a fundamental misunderstanding of the record before us. The referendum question clearly indicates that the new school building will occupy a space of approximately 96,000 square feet. That area, however, represents only approximately 2.20 acres of land.[19] Accordingly, under the facts of this case, there are approximately 27.80 undisputed acres remaining to construct the other related items such as roads, fields and parking. I do not believe it is feasible to conclude, basically as a matter of law, without appropriate factual support produced before the trial court, that the 196 acres for general purposes and open space[20] can be shown to be related to the school purpose.

In short, the problem in the present case is not that the defendant lacked the authority to take the general purposes and open space portions but, rather, that unless such taking was for a school purpose the defendant was required to act within the statutorily prescribed six month period for nonschool related municipal takings as set forth in § 48-6 (a). Because

---

[19] I take judicial notice that one acre equals 43,560 square feet. The World Almanac (2008) p. 348.

[20] I emphasize that the designated open space portion is approximately *twice* the size of the eighty acres allegedly needed for the entire school project, including the buildings, roadways, ball fields and septic fields, and *four times* the size of the entirety of Bushnell Park in Hartford, which I notice as consisting of thirty-seven acres. See http://www.bushnellpark.org/Content/Bushnell_Park_Foundation.asp; see also *Sheff* v. *O'Neill*, 248 Conn. 1, 38 n.42, 678 A.2d 1267 (1996) (permitting judicial notice of certain statistics).

there is an issue of fact as to whether the taking of approximately fifty acres for general purposes and approximately 146 acres for open space was for a school purpose or separate from such purpose, summary judgment is not appropriate at this stage of the proceedings. For those reasons, I would affirm the judgment of the Appellate Court.

On remand, I would envision two possible scenarios: First, the defendant may be able to demonstrate that the entire taking was for a school purpose, in which case the defendant would prevail. Second, the defendant may fail to demonstrate that some or all of the general purposes and open space portions were taken for a school purpose. In that case, the trial court may set aside some portions of the taking; in which case, those portions would either revert back to the plaintiffs or the defendant would proceed anew under § 48-6 (a).[21]

For the foregoing reasons, I respectfully dissent.

[21] The legal issue as to whether there is a time limit for takings under § 10-241a, which is implicated by the issues in this case, was discussed in the parties' briefs. The concept that a town has a six month time limit when it condemns property for general municipal purposes but has absolutely no time limit when it condemns private property for school purposes seems contrary to basic principles of law, reason and common sense. It would appear that the standard of review that requires strictly construing the authority to condemn *against the condemnor* and in favor of the owner would militate against the defendant, especially where it may be that a portion of the taking is for school purposes and a portion is not for school purposes. Because the issue was not thoroughly briefed and because the construction of the school is complete, raising equitable concerns that would militate against voiding the entire taking in any event, resolution of this issue should await another day.