STEARNS AND WHEELER, LLC *v.* KOWALSKY
BROTHERS, INC.
(SC 17906)

Norcott, Katz, Palmer, Vertefeuille and Schaller, Js.

Argued February 4—officially released October 7, 2008

*William M. Bloss*, with whom were *Jan A. Marcus*, and, on the brief, *Richard A. Bieder* and *Cynthia C. Bott*, for the appellant (plaintiff).

*Robert C. E. Laney*, with whom was *Kristine F. Pond*, for the appellee (defendant).

*Opinion*

SCHALLER, J. In this appeal,[1] the plaintiff, Stearns and Wheeler, LLC,[2] claims that the trial court improperly rendered summary judgment in favor of the defendant, Kowalsky Brothers, Inc.[3] The plaintiff brought this action pursuant to the Connecticut Unfair Trade Prac-

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] The plaintiff is an environmental engineering firm.

[3] The defendant is an excavation and construction contractor.

tices Act (CUTPA), General Statutes § 42-110a et seq., alleging that it had suffered ascertainable loss as the result of the defendant's wrongful conduct, which had caused two separate wrongful death actions to be brought against the plaintiff. The plaintiffs in the wrongful death actions are the administrators of the estates (estates) of two of the defendant's employees who had died in the course of their employment. Thereafter, the plaintiff assigned this action to the estates. The defendant then filed a motion for summary judgment, which the trial court granted. The plaintiff claims on appeal that the trial court improperly determined that the present action must be treated as a wrongful death action by virtue of the plaintiff's assignment of the action to the estates, and that the action, therefore, is barred by the exclusivity provision of the Workers' Compensation Act, General Statutes § 31-275 et seq.[4] We conclude that enforcement of the assignment of this CUTPA action would violate the public policy embodied in the Workers' Compensation Act and, therefore, affirm the judgment of the trial court.

The record reveals the following undisputed facts and procedural history. In April, 1997, Lansdowne Condominium Association (Lansdowne) hired the plaintiff, an environmental engineering firm, to study the discolored appearance of a sedimentation pond located on Lansdowne's property, and to design and implement a plan to remedy the discoloration. The plaintiff concluded that iron leachate, flowing into the pond from a twenty-four inch storm water sewer pipe, was the

___

[4] The exclusivity provision is codified at General Statutes § 31-284 (a), which provides in relevant part: "An employer . . . shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained . . . . All rights and claims between an employer . . . and employees . . . arising out of personal injury or death sustained in the course of employment are abolished other than rights and claims given by this chapter . . . ."

primary cause of the discoloration. The defendant submitted the winning bid for the repair project, and began work to seal the drainpipe.[5]

On or about July 23, 1998, two of the defendant's employees were assigned the task of cleaning out the manholes that led to the pipe that was scheduled to be sealed. Both employees died from asphyxiation while working in a manhole. The defendant carried workers' compensation insurance, which paid benefits to the estates according to the terms of that policy.[6] The estates also filed wrongful death actions against the plaintiff, alleging negligence. On or about May 15, 2003, the plaintiff filed the present action against the defendant. In February, 2004, the plaintiff and the estates settled the wrongful death actions.[7]

In the present action, the plaintiff alleged that it was in a commercial relationship with the defendant by virtue of a letter from the plaintiff to the defendant dated January 20, 1998, which outlined the details of the work to be done by the defendant and the method of payment for the work. The plaintiff further alleged that the defendant had represented itself as an experienced and qualified contractor, capable of undertaking the construction project on Lansdowne's property, and that the defendant had violated CUTPA by failing to

[5] The plaintiff claims that it entered into a commercial relationship with the defendant by way of a written letter agreement, dated January 20, 1998. The defendant claims that this agreement created no such relationship. Instead, the defendant claims that it performed its work pursuant to an agreement dated April 16, 1998, between Lansdowne and the defendant.

[6] The estates also filed wrongful death actions against the defendant. The court in those actions rendered summary judgment in favor of the defendant, citing the workers' compensation exclusivity provision.

[7] Pursuant to the terms of the settlement, the estates agreed to drop their respective wrongful death actions against the plaintiff in exchange for $1.8 million and an assignment of the plaintiff's claim in the present action. The plaintiff alleged, in the present action, that it had spent a total of $500,000 in legal fees as it litigated against the estates.

comply with applicable federal law while offering its services to the public. The plaintiff also alleged that it suffered an ascertainable economic loss as a result of the defendant's violation of CUTPA, including the amounts paid in settlement of the wrongful death actions and attorney's fees. See footnote 7 of this opinion. On or about February 12, 2004, the plaintiff, pursuant to its settlement agreement in the wrongful death actions, assigned its interest in the CUTPA action to the estates. In September, 2005, attorneys for the estates entered appearances on behalf of the plaintiff in this matter.

Thereafter, the defendant filed a motion for summary judgment. First, the defendant argued in its motion that the assignment in this case violated public policy for two reasons: (1) a CUTPA action is not assignable by its nature; and (2) the assignment in this case is an impermissible " 'end run' " around the workers' compensation exclusivity provision. Second, the defendant argued that the plaintiff lacked standing to bring a CUTPA claim against the defendant because the plaintiff was neither a competitor of, nor engaged in a commercial relationship with, the defendant. Third, the defendant argued that the plaintiff did not suffer an ascertainable loss as required by CUTPA.[8]

The trial court granted the defendant's motion for summary judgment. In its memorandum of decision, the trial court stated: "The CUTPA claim in this case arises out of the personal injury and death of [the defendant's employees]. If [the defendant's employees] had not been injured and died in the course of their employment, they would not have sought workers' compensa-

---

[8] The defendant also argued that the plaintiff's claim was time barred by the applicable statute of limitations, but the defendant's counsel stated at oral argument on the motion for summary judgment that the defendant was not pursuing that claim. The defendant does not attempt to renew its statute of limitations claim in this appeal.

tion benefits, would not have filed an action against [the plaintiff] for negligence and [the plaintiff] would not have brought this CUTPA claim against [the defendant]. The 'ascertainable loss' that [the plaintiff] alleges is the amount that [the plaintiff] agreed to pay to the estates . . . in [their] negligence action . . . plus their attorney's fees." The trial court then concluded that "this case, while pleaded as a CUTPA claim . . . is now, by virtue of the assignment, an action by the . . . estates seeking money damages from their employer on account of their deaths that are in addition to the benefits they received under the [Workers' Compensation Act]. It is the nature of the relief sought, that determines the character of the action, not simply how it is characterized by the parties."

The trial court concluded: "The allegations of loss in [the plaintiff's] complaint and the arguments it makes in its memorandum in opposition to the motion for summary judgment . . . show how enmeshed [the plaintiff's] CUTPA claim is with the underlying wrongful death actions against [the plaintiff]. The relief sought is actually in the nature of indemnification for the amounts paid by [the plaintiff] in settling the negligence action brought by the estates. Allowing an assignment to the estates . . . of a claim against the employer that is directly related to the employees' employment-related deaths would circumvent the public policy underlying the exclusivity provision of the Workers' Compensation Act. Accordingly, the court finds that this action is not assignable as a matter of public policy." The trial court rendered judgment in favor of the defendant. This appeal followed.

On appeal, the plaintiff claims that the trial court improperly concluded that the plaintiff's assignment of the CUTPA action to the estates transformed the action into a wrongful death action that was barred by the exclusivity provision of the Workers' Compensation

Act.[9] We conclude that the assignment of the plaintiff's CUTPA claim to the estates may not be enforced because enforcement would violate the public policy set forth in the workers' compensation exclusivity provision. Because we affirm the judgment of the trial court on that basis, we need not consider whether the assignment of the CUTPA action transformed that action into a wrongful death action.

We review this matter under our well settled standard of review. A court shall render summary judgment "if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . The test is whether the party moving for summary judgment would be entitled to a directed verdict on the same facts. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Mazurek* v. *Great American Ins. Co.*, 284 Conn. 16, 26–27, 930 A.2d 682 (2007). Moreover, the question of whether the assignment of an action is barred as a matter of public policy is an issue of law; see *Faulkner*

---

[9] The defendant also asserts two different alternative grounds for affirmance: (1) permitting the assignment to the estates, the defendant's former adversary, would violate the principles set forth in *Gurski* v. *Rosenblum & Filan, LLC*, 276 Conn. 257, 272–80, 885 A.2d 163 (2005); and (2) the plaintiff lacked standing to pursue a CUTPA claim against the defendant because it either did not demonstrate an ascertainable loss of money or property resulting from an unfair trade practice or was not engaged in a commercial relationship with the defendant. Because we affirm the judgment of the trial court, we need not address these claims.

v. *United Technologies Corp.*, 240 Conn. 576, 588, 693 A.2d 293 (1997) (question of whether challenged discharge from employment violates public policy is question of law); and our review is therefore plenary. *Prescott* v. *Meriden*, 273 Conn. 759, 764, 873 A.2d 175 (2005).

To resolve the question of whether the assignment of this particular CUTPA claim violates public policy, we first review the general principles that guide our inquiry as to the issue of the assignability of legal actions.[10] We previously have recognized that the assignment of contract claims is permissible. See *Rumbin* v. *Utica Mutual Ins. Co.*, 254 Conn. 259, 267–68, 757 A.2d 526 (2000). In *Rumbin*, we stated that "the modern approach to contracts rejects traditional common-law restrictions on the alienability of contract rights in favor of free assignability of contracts. . . . Common-law restrictions on assignment were abandoned when courts recognized the necessity of permitting the transfer of contract rights. The force[s] of human convenience and business practice [were] too strong for the common-law doctrine that [intangible contract rights] are not assignable." (Citations omitted; internal quotation marks omitted.) Id.

We have prohibited, however, the assignment of tort claims. See *Dodd* v. *Middlesex Mutual Assurance Co.*, 242 Conn. 375, 382–84, 698 A.2d 859 (1997). In *Dodd*, we concluded that "[t]he reasons underlying the rule [prohibiting the assignment of causes of action to

---

[10] CUTPA is silent as to whether an action brought pursuant to its provisions may be assigned. See General Statutes § 42-110a et seq. In this respect, CUTPA is not unlike other statute based causes of action. See, e.g., General Statutes § 52-568 (providing damages for groundless or vexatious lawsuits or affirmative defenses); General Statutes § 22a-452 (a) (providing reimbursement for containment or remediation of environmental damage to property); General Statutes § 13a-149 (providing damages for injuries caused by defective roads and bridges); General Statutes § 52-556 (providing damages for injuries caused by motor vehicles owned and insured by state).

recover for personal injuries] have been variously stated: unscrupulous interlopers and litigious persons were to be discouraged from purchasing claims for pain and suffering and prosecuting them in court as assignees; actions for injuries that in the absence of statute did not survive the death of the victim were deemed too personal in nature to be assignable; a tortfeasor was not to be held liable to a party unharmed by him; and excessive litigation was thought to be reduced."[11] (Internal quotation marks omitted.) Id., 382–83.

We recognize that CUTPA claims, generally, are purely statutory and cannot be precisely characterized either as tort claims or as contract claims. Therefore, neither *Dodd* nor *Rumbin* is helpful in resolving the issue presented to the court in this case. Accordingly, we review the trial court's decision de novo in order to determine if this particular assignment violates public policy.[12] See *Gurski* v. *Rosenblum & Filan, LLC*, 276 Conn. 257, 266, 885 A.2d 163 (2005).

---

[11] In *Dodd*, we ultimately concluded that the action at issue was a contract action rather than a tort action. *Dodd* v. *Middlesex Mutual Assurance Co.*, supra, 242 Conn. 384.

[12] The defendant argues that CUTPA claims, generally, are not assignable. Although we do not reach this issue, we note that two state supreme courts, one in North Carolina and the other in Texas, have concluded that actions brought pursuant to their respective deceptive trade practices acts, which are similar but not identical to CUTPA, are not assignable. See *Investors Title Ins. Co.* v. *Herzig*, 330 N.C. 681, 688, 413 S.E.2d 268 (1992); *PPG Industries, Inc.* v. *JMB/Houston Centers Partners Ltd. Partnership*, 146 S.W.3d 79, 83–87 (Tex. 2004). In both cases, the courts expressed legitimate concerns about the market that would be created if deceptive trade practices claims were assignable. See *Dodd* v. *Middlesex Mutual Assurance Co.*, supra, 242 Conn. 382–84.

CUTPA allows for the recovery of punitive damages; see General Statutes § 42-110g (a); and attorney's fees. See General Statutes § 42-110g (d). Therefore, although CUTPA claims are neither contract nor tort claims, and CUTPA claims may occasionally arise out of contractual relationships, the considerations of business necessity that underlie the policy allowing the free assignment of ordinary contract rights may not apply generally to CUTPA claims. The policies against trafficking in personal claims and excessive litigation, in contrast, may apply. Indeed, in light of the expanded

It is well established that in order to prevail on a CUTPA claim, the plaintiff must demonstrate that it has suffered "any ascertainable loss of money or property . . . as a result of" the defendant's acts or practices. General Statutes § 42-110g (a). In this case, the plaintiff claims that the sum paid to the estates pursuant to the settlement of the estates' wrongful death actions is an ascertainable loss. The plaintiff's CUTPA action, therefore, is inextricably linked to the wrongful death actions brought by the estates.

It is clear that if we enforce the assignment of the plaintiff's CUTPA action to the estates, the estates could seek to recover damages from the defendant that ultimately derive from the deaths of its former employees for injuries that the employees sustained during the course of their employment by the defendant. It is also clear, therefore, that the enforcement of the assignment squarely implicates the strong, clearly defined public policy that "[a]n employer . . . shall not be liable *for any action for damages* on account of personal injury sustained by an employee arising out of and in the course of his employment or *on account of death resulting from personal injury* so sustained . . . . All rights and claims between an employer . . . and employees . . . arising out of personal injury or death sustained in the course of employment are abolished other than rights and claims given by this chapter . . . ." (Emphasis added.) General Statutes § 31-284 (a); see also *Pietraroia* v. *Northeast Utilities*, 254 Conn. 60, 74, 756 A.2d 845 (2000) ("The Workers' Compensation Act . . . provides the sole remedy for employees and their dependents for work-related injuries and

remedies available under CUTPA, most notably, the availability of attorney's fees, the temptation for "unscrupulous interlopers and litigious persons"; (internal quotation marks omitted) *Dodd* v. *Middlesex Mutual Assurance Co.*, supra, 242 Conn. 382; to interfere would be greater in this context than in tort claims, giving these concerns even greater force.

death. . . . Its purpose is to provide a prompt, efficient, simple and inexpensive procedure for obtaining benefits related to employment." [Citation omitted; internal quotation marks omitted.]). The exclusivity provision in § 31-284 (a) manifests a legislative policy decision that a limitation on remedies is an appropriate trade-off for the benefits provided by workers' compensation. *Driscoll* v. *General Nutrition Corp.*, 252 Conn. 215, 220–21, 752 A.2d 1069 (2000). The sole exception to this provision is the intentional tort exception to workers' compensation exclusivity, as articulated in *Suarez* v. *Dickmont Plastics Corp.*, 229 Conn. 99, 109–10, 639 A.2d 507 (1994).

We conclude that the assignment of the plaintiff's CUTPA action to the estates is unenforceable because it would enable the estates to seek recovery from the defendant, and thus would undermine the well-defined legislative policy limiting remedies against employers and would effectively circumvent the workers' compensation exclusivity provision. Indeed, were we to conclude that the assignment of the plaintiff's CUTPA action is enforceable, the facts of this case would provide a veritable road map for the circumvention of the workers' compensation exclusivity provision in all cases where a subcontractor's employee is injured, and recovers tort damages for those injuries from the general contractor.[13]

[13] Moreover, the provisions of CUTPA counsel against assignment of this particular claim. The estates, as representatives of the employees of the defendant, would be barred from bringing a CUTPA action against the defendant. CUTPA applies only to acts "in the conduct of any trade or commerce." General Statutes § 42-110b (a). Section 42-110a (4) provides: " '[t]rade' and 'commerce' means the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state." Despite this broad language, the definition of trade and commerce is not unlimited and has been used to restrict the application of CUTPA. See *Burkert* v. *Petrol Plus of Naugatuck, Inc.*, 216 Conn. 65, 85, 579 A.2d 26 (1990) (concluding that licensing of trademark by one not involved in sale, renting, leasing or distribu-

For the foregoing reasons, we conclude that the assignment of the plaintiff's CUTPA claim to the estates is not enforceable. Accordingly, we conclude that the trial court properly rendered summary judgment for the defendant.

The judgment is affirmed.

In this opinion the other justices concurred.

tion of defective transmission fluid did not fall within definition of trade and commerce). Particularly relevant is our holding in *United Components, Inc.* v. *Wdowiak*, 239 Conn. 259, 264–65, 684 A.2d 693 (1996), in which we concluded that an employee could not bring a CUTPA action against his employer because the employer-employee relationship fell outside of the definition of trade and commerce for the purposes of CUTPA. Accordingly, an assignment to the estates in this case would effectively allow estates of employees to pursue CUTPA actions against employers, a result that contravenes the legislative definition of trade and commerce as well as our own interpretation of that definition.