******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

NORTHEAST BUILDING SUPPLY, LLC *v.*
MAUREEN MORRILL ET AL.
(AC 45845)

Moll, Clark and Seeley, Js.

*Syllabus*

The plaintiff, N Co., appealed to this court from the judgment of the trial
court denying its application for a prejudgment remedy pursuant to
statute (§ 52-278a et seq.). N Co.'s proposed complaint alleged common-
law and statutory vexatious litigation claims that arose out of an earlier
action to which N Co. was not a party. The trial court in the earlier
action had rendered judgment for H Co., the plaintiff in that action, and
it awarded attorney's fees to H Co. H Co. thereafter changed its name
to B Co., and B Co. assigned the judgment obtained in the earlier action
and all related claims arising out of such litigation to N Co. The defen-
dants named in the present action were either defendants in the earlier
action or attorneys and law firms who represented those defendants.
The court in the present action thereafter denied N Co.'s application,
concluding that its proposed vexatious litigation claims were barred by
the doctrine of collateral estoppel and that the payment of any judgment
rendered against the law firm defendants would be adequately secured
by insurance. *Held* that the trial court lacked subject matter jurisdiction
over N Co.'s application for a prejudgment remedy, as N Co. lacked
standing to bring the application predicated on its vexatious litigation
claims: N Co.'s claims fell squarely within the category of tort claims
that may not be assigned, as its alleged damages included, inter alia,
claims of injuries to H Co.'s business reputation and attorney's fees
necessary for the defense of claims against H Co., which were personal
in nature and accrued only to H Co. and not to N Co.; accordingly, this
court reversed the trial court's judgment and directed the trial court to
dismiss N Co.'s application.

Argued November 14, 2023—officially released March 5, 2024

*Procedural History*

Application for a prejudgment remedy seeking the
attachment or garnishment of certain of the defendants'
property, brought to the Superior Court in the judicial
district of Waterbury, where the court, *Pierson, J.*,
denied the application, and the plaintiff appealed to this
court. *Reversed*; *judgment directed.*

*Bruce L. Elstein*, for the appellant (plaintiff).

*Kenneth A. Votre*, for the appellees (named defendant
et al.).

*Jonathan C. Zellner*, for the appellees (defendant
Bruce W. Diamond et al.).

*Lorey Rives Leddy*, with whom, on the brief, was
*David P. Friedman*, for the appellees (defendants Pull-
man & Comley, LLC, et al.).

*Opinion*

CLARK, J. The plaintiff, Northeast Building Supply, LLC, appeals from the judgment of the trial court denying the application for a prejudgment remedy that it filed in accordance with General Statutes § 52-278a et seq. against the defendants, Maureen Morrill, Clifford Jones, Pullman & Comley, LLC, Attorney Irve Goldman, Attorney Bruce Diamond, and the Law Office of Bruce W. Diamond, LLC. On appeal, the plaintiff claims that the trial court erred in denying its application for a prejudgment remedy when it concluded that (1) collateral estoppel barred the vexatious litigation claims it sought to bring against the defendants and (2) the attorney and law firm defendants—Pullman & Comley, LLC, Goldman, Diamond, and the Law Office of Bruce W. Diamond, LLC—had adequate insurance to secure any judgment that might be rendered against them.

The defendants argue that the court properly denied the plaintiff's application for a prejudgment remedy. They also, for the first time on appeal, raise a jurisdictional claim. They claim that the plaintiff lacked standing to assert the vexatious litigation claims against the defendants because those claims were assigned to the plaintiff from a different entity, Northeast Builders Supply & Home Centers, LLC (Home Centers). The defendants argue that the plaintiff's vexatious litigation claims constitute tort claims that involve alleged personal injuries unique to Home Centers. They further contend that Connecticut law makes clear that such tort claims may not be assigned. Consequently, the defendants maintain that the plaintiff lacks standing to pursue its application for a prejudgment remedy.

For the reasons that follow, we agree with the defendants that the plaintiff lacks standing to pursue the application for a prejudgment remedy and, consequently, that the trial court was without subject matter jurisdiction. Accordingly, we reverse the judgment of the trial court and remand the case to that court with direction to render judgment dismissing the plaintiff's application.[1]

I

We begin with an overview of the relevant facts and procedural history of this case. On September 17, 2021, the plaintiff filed an application for a prejudgment remedy pursuant to General Statutes § 52-278c,[2] alleging that there was probable cause to believe that it would recover at least $600,000 on the basis of its proposed, unsigned writ of summons and complaint. The plaintiff's proposed three count complaint against the defendants alleged a common-law vexatious litigation claim, a statutory vexatious litigation claim for double damages pursuant to General Statutes § 52-568 (1), and a statutory vexatious litigation claim for treble damages pursuant to § 52-568 (2), all arising out of an earlier

action to which the plaintiff was not a party. See *Northeast Builders Supply & Home Centers*, *LLC* v. *RMM Consulting*, *LLC*, Superior Court, judicial district of Fairfield, Docket No. CV-09-5021502 (February 2, 2018), aff'd, 202 Conn. App. 315, 245 A.3d 804, cert. denied, 336 Conn. 933, 248 A.3d 709 (2021) (RMM litigation).

The RMM litigation to which the plaintiff was not a party was commenced by Home Centers, a building supply company, against RMM Consulting, LLC (RMM); Todd Hill Properties, LLC; Morrill; and Jones (original defendants) to recover damages for breach of contract after the original defendants purportedly failed to make payments owed for building materials sold to them pursuant to a credit agreement. See *Northeast Builders Supply & Home Centers*, *LLC* v. *RMM Consulting*, *LLC*, 202 Conn. App. 315, 321, 245 A.3d 804, cert. denied, 336 Conn. 933, 248 A.3d 709 (2021). The credit agreement entered into between Home Centers and the original defendants was signed by Morrill, who was the sole member of both RMM and Todd Hill Properties, LLC, and by Jones, who is Morrill's husband and a building contractor, in their capacities as both buyers and personal guarantors. Id., 320. The defendant Diamond, the principal of the defendant Law Office of Bruce Diamond, LLC, represented the original defendants in the RMM litigation. The defendant Goldman, an attorney with the defendant Pullman & Comley, LLC, also represented Morrill and Jones in that action but only with respect to the fifth special defense, which claimed that the original defendants had not purchased any of the goods and materials at issue from Home Centers.

After lengthy litigation and a bench trial, the court, *Arnold, J.*, rendered judgment in favor of Home Centers on its claims and on the original defendants' counterclaim. The court awarded Home Centers $68,886.58, plus interest on the principal debt. See id., 328. The court further indicated that it would schedule a postverdict hearing to determine "if the court would award attorney's fees and costs to the plaintiff and, if so, what amounts may be reasonable." In its memorandum of law in support of attorney's fees, Home Centers argued that it was entitled to attorney's fees exceeding the amount its attorneys were entitled to in accordance with the contingency fee arrangement it had entered into with its attorneys because Home Centers and its counsel expended significant time and resources defending against what Home Centers argued were meritless defenses. After a hearing, the court rejected Home Centers' claim that it was entitled to attorney's fees in excess of the amount it owed under the contingency fee arrangement and awarded Home Centers a total of $35,346.87 in attorney's fees, which included $10,846.87 in accordance with the contingency fee agreement between Home Centers and its counsel to prosecute its case-in-chief, $9500 for the defense of the original defendants' counterclaim, and $15,000 for the represen-

tation of Home Centers' interest in the United States Bankruptcy Court.[3]

The plaintiff's unsigned, proposed complaint in support of its application for a prejudgment remedy in this case alleges that, "[b]efore December 14, 2020, [Home Centers] obtained a judgment against the defendants, Morrill and Jones (among others)" and that, "[o]n or about December 14, 2020, [Home Centers] changed its name to Brilco [Capital Holdings, LLC (Brilco)]." The unsigned complaint further alleges that the plaintiff has standing because "[o]n or about August 10, 2021, Brilco, [formerly known as Home Centers], assigned the judgment obtained in the RMM litigation and all related claims that arose out of or [were] related to such litigation to [the plaintiff]."

In October, 2021, the defendants Pullman & Comley, LLC, Goldman, Diamond, and the Law Office of Bruce W. Diamond, LLC (collectively, law firm defendants), filed objections to the plaintiff's application for a prejudgment remedy arguing, inter alia, that the doctrine of collateral estoppel barred the plaintiff's vexatious litigation claims against them. They claimed that Judge Arnold in the RMM litigation already found that the original defendants "in good faith exercised their rights and available remedies in defending [that] case," and that the pursuit of the fifth special defense reflected a proper effort to use all the "tools" in the original defendants' "toolbox." They further claimed that these findings were fundamental to the trial court's determination that Home Centers' award of attorney's fees was limited to the amount due under the contingency fee agreement and not based on an hourly rate. Accordingly, they argued that the doctrine of collateral estoppel barred the plaintiff's underlying vexatious litigation claims and that the plaintiff therefore could not establish that there was probable cause that it would obtain a judgment in the amount it sought in its application for a prejudgment remedy. The law firm defendants also argued that the plaintiff's application should be denied because they had ample insurance to cover any judgment against them. See General Statutes § 52-278d (a) (4).

On February 2, 2022, the court, *Pierson, J.*, ordered that the evidentiary hearing on the plaintiff's application for a prejudgment remedy would be bifurcated, and that the hearing would be held on two separate days. Phase I of the hearing would be limited to whether (1) the plaintiff was collaterally estopped from pursuing the application against one or all of the defendants and (2) the defendants had adequate insurance to secure a judgment in the amount of $600,000. Phase II would address all remaining factual and legal issues raised by the plaintiff's application and the defendants' opposition thereto.[4]

On September 21, 2022, the court denied the plaintiff's

application for a prejudgment remedy. The court concluded that (1) the plaintiff failed to demonstrate probable cause that a judgment in the amount sought would be rendered in its favor because its proposed vexatious litigation claims were barred by the doctrine of collateral estoppel and (2) as to the law firm defendants, the payment of any judgment rendered against them was adequately secured by insurance. See General Statutes § 52-578d (a). The plaintiff timely appealed the court's decision.

## II

For the first time on appeal, the defendants challenge the plaintiff's standing to bring its application for a prejudgment remedy against them. In the defendants' view, the underlying vexatious litigation claims that the plaintiff seeks to pursue in this case are tort claims alleging personal injuries unique to Home Centers and therefore are not assignable from Home Centers to the plaintiff under Connecticut law. As a result, the defendants claim that the plaintiff lacked standing to bring its application for a prejudgment remedy because it is predicated on claims that the plaintiff does not have standing to assert. They therefore claim the trial court lacked subject matter jurisdiction over the matter.[5]

The plaintiff argues that it has standing because the assignment at issue is valid and enforceable. Specifically, the plaintiff maintains that enforcement of the assignment would not violate public policy because the assignment was part of the business reorganization of Home Centers. It contends that Home Centers was reorganized pursuant to a reorganization agreement, that Home Centers changed its name to Brilco, and that Brilco transferred, assigned, and conveyed all of the operating assets it owned to New Holdco, defined as Northeast Group Holdings, LLC. The plaintiff contends that New Holdco then transferred to the plaintiff all rights, title, and interest in Brilco. As a result, the plaintiff contends that it now owns and runs the business that was formerly known as Home Centers. The plaintiff maintains that, under such circumstances, it would not violate public policy to enforce the transfer and assignment of the vexatious litigation claims, which in its view are not unique or personal to Home Centers. In addition, the plaintiff contends that the defendants' arguments go to the validity of the assignment, not to whether it had standing to pursue the application for a prejudgment remedy.

### A

We begin with the relevant legal principles relating to standing. "The issue of standing implicates the trial court's subject matter jurisdiction and therefore presents a threshold issue for our determination. . . . Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction

of the court unless [it] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." (Internal quotation marks omitted.) *Deutsche Bank National Trust Co.* v. *Bliss*, 159 Conn. App. 483, 488, 124 A.3d 890, cert. denied, 320 Conn. 903, 127 A.3d 186 (2015), cert. denied, 579 U.S. 903, 136 S. Ct. 2466, 195 L. Ed. 2d 801 (2016).

"A valid assignment transfers to the assignee exclusive ownership of all of the assignor's rights to the subject assigned and extinguishes all of those rights in the assignor." *Mall* v. *LaBow*, 33 Conn. App. 359, 362, 635 A.2d 871 (1993), cert. denied, 229 Conn. 912, 642 A.2d 1208 (1994); see also *Bouchard* v. *People's Bank*, 219 Conn. 465, 473, 594 A.2d 1 (1991). Contrary to the plaintiff's contention on appeal, our case law makes clear that the validity or enforceability of an assignment implicates the standing of an assignee to pursue purportedly assigned claims. See *Bozelko* v. *Milici*, 139 Conn. App. 536, 539–40, 57 A.3d 762 (2012) (plaintiff who assigned interest in action to third person no longer had standing to file petition for new trial), cert. denied, 308 Conn. 914, 61 A.3d 1101 (2013). Indeed, in the absence of a lawful assignment of a claim, a purported assignee cannot stand in the shoes of the assignor and, therefore, lacks standing to proceed with that claim. See id.; see also *Riffin* v. *Consolidated Rail Corp.*, 783 Fed. Appx. 246, 250 (3d Cir. 2019) ("[T]he purported assignment to [the plaintiff] is champertous, and, therefore, it is invalid. Thus, [the plaintiff] lacked standing to bring his claims here.").

"[W]hen a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause. . . . We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . In addition, because standing implicates the court's subject matter jurisdiction, the issue of standing is not subject to waiver and may be raised at any time." (Internal quotation marks omitted.) *Deutsche Bank National Trust Co.* v. *Bliss*, supra, 159 Conn. App. 488; see also *Premier Capital, LLC* v. *Shaw*, 189 Conn. App. 1, 5, 206 A.3d 237 (2019) (judgment debtor's claim that plaintiff lacked standing to bring action was reviewable on appeal, even though judgment debtor raised it for first time on appeal).

B

We turn next to the law in Connecticut governing the assignability of claims. The question of whether a particular legal claim may be assigned requires an examination of the nature of the legal claim at issue. Our Supreme Court, for instance, has held that the assignment of contract claims is permissible; *Rumbin* v. *Utica Mutual Ins. Co.*, 254 Conn. 259, 267–68, 757 A.2d 526 (2000); but the assignment of tort claims is

not. See *Dodd* v. *Middlesex Mutual Assurance Co.*, 242 Conn. 375, 382–84, 698 A.2d 859 (1997). With respect to contract claims, our Supreme Court has explained that "the modern approach to contracts rejects traditional common-law restrictions on the alienability of contract rights in favor of free assignability of contracts. . . . Common-law restrictions on assignment were abandoned when courts recognized the necessity of permitting the transfer of contract rights. The force[s] of human convenience and business practice [were] too strong for the common-law doctrine that [intangible contract rights] are not assignable." (Citations omitted; internal quotation marks omitted.) *Rumbin* v. *Utica Mutual Ins. Co.*, supra, 267–68.

Conversely, our Supreme Court has held that tort claims alleging injuries that are personal in nature are not assignable. See *Stearns & Wheeler, LLC* v. *Kowalsky Bros.*, 289 Conn. 1, 8, 955 A.2d 538 (2008) ("[w]e have prohibited . . . the assignment of tort claims"); *Gurski* v. *Rosenblum & Filan, LLC*, 276 Conn. 257, 267, 885 A.2d 163 (2005) ("[w]e have taken a contrary position . . . with respect to whether a tort claim can be assigned, at least when the claim is based on personal injury"). In *Dodd*, our Supreme Court explained that "[t]he reasons underlying the rule [prohibiting the assignment of causes of action to recover for personal injuries] have been variously stated: unscrupulous interlopers and litigious persons were to be discouraged from purchasing claims for pain and suffering and prosecuting them in court as assignees; actions for injuries that in the absence of statute did not survive the death of the victim were deemed too personal in nature to be assignable; a tort-feasor was not to be held liable to a party unharmed by him; and excessive litigation was thought to be reduced." (Internal quotation marks omitted.) *Dodd* v. *Middlesex Mutual Assurance Co.*, supra, 242 Conn. 382–83.

It is not always clear, however, whether a particular claim is a "contract" claim or a "tort" claim for purposes of assignability. In such circumstances, our Supreme Court has undertaken an individualized and fact specific analysis to determine whether the assignment of the particular claim in question violates public policy. In *Gurski* v. *Rosenblum & Filan, LLC*, supra, 276 Conn. 267–68, for example, our Supreme Court observed that, "[b]ecause an action for legal malpractice can be pleaded either in contract or in tort . . . neither *Dodd* nor *Rumbin*, nor their labels, [was] helpful," and that "the better approach [was] to resolve the issue uniformly on the basis of public policy." (Citations omitted.) Id. The court held that "an assignment of a legal malpractice claim or the proceeds from such a claim to an adversary in the same litigation that gave rise to the alleged malpractice is against public policy and thereby unenforceable." Id., 259–60.

Similarly, in *Stearns & Wheeler, LLC* v. *Kowalsky Brothers, Inc.*, supra, 289 Conn. 9, our Supreme Court concluded that the claim in that case of a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., was not clearly a contract claim or a tort claim because "CUTPA claims, generally, are purely statutory and cannot be precisely characterized either as tort claims or as contract claims." The court again resolved the issue of assignability by undertaking an individualized public policy analysis of the particular claim that was assigned in that case. Id., 10–11. The court concluded that the assignment of the plaintiff's CUTPA claim in that case was invalid because enforcement would violate the public policy interests of the exclusivity provision of the Workers' Compensation Act, General Statutes § 31-275 et seq.[6] Id., 11.

In the present case, the vexatious litigation claims that the plaintiff asserts do not require us to undertake an individualized and fact specific analysis to determine whether the assignment of those claims violates public policy. That is because the plaintiff's vexatious litigation claims fall squarely within the category of tort claims that may not be assigned. First, Connecticut courts have historically and routinely categorized vexatious litigation claims as tort claims. See, e.g., *Rioux* v. *Barry*, 283 Conn. 338, 347, 927 A.2d 304 (2007) ("the fact that the *tort* of vexatious litigation itself employs a [balancing test] . . . counsels strongly against a categorical or absolute immunity from a claim of vexatious litigation" (emphasis added)); *DeLaurentis* v. *New Haven*, 220 Conn. 225, 267, 597 A.2d 807 (1991) ("lack of probable cause is the gravamen of the *tort* of vexatious suit" (emphasis added)); *Blake* v. *Levy*, 191 Conn. 257, 262–63, 464 A.2d 52 (1983) ("[i]n a case like the present one, where the claimed impropriety arises out of previous litigation, we may usefully look for guidance to the principles that have evolved to define the *tort* of malicious prosecution and vexatious litigation, because those kindred torts have also had to address the competing policies of deterrence of groundless litigation and protection of good faith access to the courts" (emphasis added)). Indeed, in defining the parameters of a vexatious litigation claim in Connecticut, our Supreme Court has often looked to the Restatement (Second) of Torts, which describes, among other things, torts relating to unjustifiable litigation, including the torts of malicious prosecution, wrongful use of civil proceedings,[7] and abuse of process. See 3 Restatement (Second), Torts, §§ 653 through 682, pp. 404–75 (1977); see also *DeLaurentis* v. *New Haven*, supra, 256; *Blake* v. *Levy*, supra, 264.

This is true regardless of whether the claim being asserted is the common-law tort of vexatious litigation or the statutory tort of vexatious litigation. "In Connect-

icut, the cause of action for vexatious litigation exists both at common law and pursuant to statute. . . . [T]o establish a claim for vexatious litigation at common law, one must prove want of probable cause, malice and a termination of suit in the plaintiff's favor. . . . The statutory cause of action for vexatious litigation exists under . . . § 52-568, and differs from a common-law action only in that a finding of malice is not an essential element, but will serve as a basis for higher damages. . . . In the context of a claim for vexatious litigation, the defendant lacks probable cause if he lacks a reasonable, good faith belief in the facts alleged and the validity of the claim asserted." (Internal quotation marks omitted.) *MacDermid, Inc.* v. *Leonetti*, 158 Conn. App. 176, 183, 118 A.3d 158 (2015). The mere fact that the legislature has chosen to codify the common-law tort of vexatious litigation with a statutory analog that differs only insofar as it eliminates the requirement that a plaintiff prove malice while also providing for the possibility of higher damages when malice is proven does not transform the claim into a contract claim or create any ambiguity with respect to whether it is a claim sounding in tort.

Second, as with other torts that our courts have deemed unassignable, the injuries suffered by plaintiffs alleging vexatious litigation are personal in nature. See *Dodd* v. *Middlesex Mutual Assurance Co.*, supra, 242 Conn. 382 ("[a]n assignment of a claim against a third person or a bargain to assign such a claim is illegal and ineffective if the claim is for . . . damages for an injury the gist of which is to the person rather than to property, unless the claim has been reduced to judgment" (internal quotation marks omitted)). Indeed, the personal nature of the tort is elucidated by the types of economic and noneconomic damages that may be incurred as a result of vexatious litigation. For example, economic damages for a vexatious litigation claim may include, inter alia, "attorney's fees, incurred to defend against the underlying action or proceeding, any lost wages for time required to attend court proceedings in the underlying action or proceeding, any loss to business or property resulting from the commencement and prosecution of the underlying action or proceeding, and any reasonable and necessary medical expenses incurred to treat physical or mental injury caused by the commencement and prosecution of the underlying action or proceeding." Connecticut Civil Jury Instructions 3.13-5 and 3.13-6, available at https://jud.ct.gov/JI/Civil/Civil.pdf (last visited February 29, 2024). As to noneconomic damages, a plaintiff may be entitled to damages for, inter alia, "mental anguish, humiliation, embarrassment, mortification, shame, fear and damage to reputation." Id. Simply put, actions for vexatious litigation recognize "the right of an *individual* to be free from unjustifiable litigation . . . . The purpose of the action is to compensate *a wronged individual* for

damage to *his* reputation and to reimburse *him* for the expense of defending against the unwarranted action." (Emphasis added; internal quotation marks omitted.) *Bernhard-Thomas Building Systems, LLC* v. *Dunican*, 286 Conn. 548, 553–54, 944 A.2d 329 (2008), citing 8 S. Speiser et al., American Law of Torts (1991) § 28:20, p. 113.

The plaintiff's proposed complaint in the present case further illustrates the personal nature inherent in a claim of vexatious litigation. It alleges, for instance, that "[Home Centers] suffered damages," including, inter alia, "[l]ost time managing its business affairs due to time spent attending to discovery, depositions, hearings and trial"; "[i]njuries to its business and professional reputation"; "[p]ublic disclosure of its private and highly confidential financial information"; "[d]isruption of personnel of [Home Centers] attending and responding to defending such claim(s)"; and "[a]ttorney's fees necessary for the defense of the claims . . . ."[8] As is true with vexatious litigation claims in general, whether asserted by an individual or a business entity, these are claims that are personal in nature and, in this case, accrued to the original assignor, Home Centers, and not the plaintiff.

Our conclusion finds further support in the decisions of our Supreme Court and courts of last resort in other states holding that malicious prosecution claims are among the class of torts that seek redress for injuries that are personal in nature and are therefore not assignable. See *Whitaker* v. *Gavit*, 18 Conn. 522, 526 (1847) ("[i]t is certain that a right of action for a personal injury, as for an assault and battery, slander, *malicious suit* . . . is not assignable even in equity" (emphasis added)); see also *Tomkovich* v. *Mistevich*, 222 Mich. 425, 429, 192 N.W. 639 (1923) ("a right of action for malicious prosecution is personal, and cannot be assigned"); *Investors Title Ins. Co.* v. *Herzig*, 330 N.C. 681, 688, 413 S.E.2d 268 (1992) ("[c]laims such as defamation, abuse of process, malicious prosecution or conspiracy to injure another's business are not assignable as such claims are considered personal torts"). Although the plaintiff in the present case asserts a vexatious litigation claim rather than a malicious prosecution claim, "[a] vexatious suit is a type of malicious prosecution action, differing principally in that it is based upon a prior civil action, whereas a malicious prosecution suit ordinarily implies a prior criminal complaint." (Internal quotation marks omitted.) *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 94, 912 A.2d 1019 (2007), citing *Schaefer* v. *O. K. Tool Co.*, 110 Conn. 528, 148 A. 330 (1930).[9] Indeed, "[t]he elements of the torts of malicious prosecution and vexatious litigation are identical . . . ." (Internal quotation marks omitted.) *Bernhard-Thomas Building Systems, LLC* v. *Dunican*, supra, 286 Conn. 553 n.6.

For the foregoing reasons, we conclude that the vexatious litigation claims assigned to the plaintiff from Home Centers are tort claims that are personal in nature and, therefore, the assignment is not enforceable. As a result, the plaintiff lacks standing to pursue those claims against the defendants. See *Stearns & Wheeler, LLC* v. *Kowalsky Bros.*, supra, 289 Conn. 8; *Bozelko* v. *Milici*, supra, 139 Conn. App. 539. It inexorably follows that the plaintiff lacked standing to bring its application for a prejudgment remedy predicated on those claims, and the trial court therefore lacked subject matter jurisdiction over the application.

The judgment is reversed and the case is remanded with direction to render judgment dismissing the plaintiff's application for a prejudgment remedy.

In this opinion the other judges concurred.

[1] In advancing their arguments, some of the defendants also appear to claim that this court lacks jurisdiction over the present appeal because the plaintiff lacked standing to bring the vexatious litigation claims against the defendants. We disagree. "It is well established that the subject matter jurisdiction of [our appellate courts] is governed by [General Statutes] § 52-263, which provides that an *aggrieved party* may appeal to the court having jurisdiction from the *final judgment* of the court." (Emphasis in original; footnote omitted; internal quotation marks omitted.) *King* v. *Sultar*, 253 Conn. 429, 434, 754 A.2d 782 (2000); see also Practice Book § 63-1. The plaintiff is the entity that initiated this matter by filing an application for a prejudgment remedy. The trial court denied the application on the basis of collateral estoppel and the adequacy of insurance. The plaintiff is aggrieved because it has a specific legal interest in its application and the issues decided by the court in denying its application. The denial of an application for a prejudgment remedy following a hearing is a final judgment for purposes of an appeal. See General Statutes § 52-278*l*. Accordingly, this court has jurisdiction over the present appeal.

[2] General Statutes § 52-278c provides in relevant part: "(a) Except as provided in sections 52-278e and 52-278f, any person desiring to secure a prejudgment remedy shall attach his proposed unsigned writ, summons and complaint to the following documents: (1) An application, directed to the Superior Court to which the action is made returnable, for the prejudgment remedy requested; (2) An affidavit sworn to by the plaintiff or any competent affiant setting forth a statement of facts sufficient to show that there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any known defenses, counterclaims or set-offs, will be rendered in the matter in favor of the plaintiff; (3) A form of order that a hearing be held before the court or a judge thereof to determine whether or not the prejudgment remedy requested should be granted and that notice of such hearing complying with subsection (e) of this section be given to the defendant; (4) A form of summons directed to a proper officer commanding him to serve upon the defendant at least four days prior to the date of the hearing, pursuant to the law pertaining to the manner of service of civil process, the application, a true and attested copy of the writ, summons and complaint, such affidavit and the order and notice of hearing . . . ."

[3] A more detailed recitation of the underlying facts of the RMM litigation is set forth in this court's prior decision in *Northeast Builders Supply & Home Centers, LLC* v. *RMM Consulting, LLC*, supra, 202 Conn. App. 321.

[4] On January 4, 2022, before issuing its February 2 bifurcation order, the court issued an order indicating that it was considering bifurcating the hearing on the plaintiff's application and provided the parties with an opportunity to brief the issue of whether bifurcation was appropriate. Each of the parties provided the court with their respective position. Additionally, on January 25, 2022, Jones and Morrill filed an objection to the plaintiff's application for a prejudgment remedy. They claimed, inter alia, that the advice of counsel defense barred the plaintiff's vexatious litigation claims against them.

[5] On October 5, 2022, after the plaintiff filed this appeal but before the parties briefed their claims, the defendants Pullman & Comley, LLC, and Goldman filed a motion to dismiss the present appeal on the ground that the plaintiff lacked standing to maintain the underlying prejudgment remedy application and proposed complaint. They argued that the vexatious litigation claims were tort claims not assignable under Connecticut law. They also argued that it was against public policy to allow Home Centers to assign the vexatious litigation claims to the plaintiff because the plaintiff was a shell company specifically formed as a separate legal entity for the sole purpose of pursuing the vexatious suit claims against the defendants in order to insulate the plaintiff from the risk of consequences should those vexatious suit claims turn out to lack probable cause. On December 13, 2022, this court denied the motion to dismiss "without prejudice to parties addressing their arguments concerning the plaintiff's standing in their briefs on the merits of this appeal."

[6] In *Stearns & Wheeler, LLC*, the defendant also argued "that CUTPA claims, generally, are not assignable." *Stearns & Wheeler, LLC* v. *Kowalsky Brothers, Inc.*, supra, 289 Conn. 9 n.12. Although the court did not directly address the defendant's argument, it noted "that two state supreme courts, one in North Carolina and the other in Texas, have concluded that actions brought pursuant to their respective deceptive trade practices acts, which are similar but not identical to CUTPA, are not assignable. See *Investors Title Ins. Co.* v. *Herzig*, 330 N.C. 681, 688, 413 S.E.2d 268 (1992); *PPG Industries, Inc.* v. *JMB/Houston Centers Partners Ltd. Partnership*, 146 S.W.3d 79, 83–87 (Tex. 2004)." *Stearns & Wheeler, LLC* v. *Kowalsky Brothers, Inc.*, supra, 9 n.12. Our Supreme Court explained that, "[i]n both cases, the courts expressed legitimate concerns about the market that would be created if deceptive trade practices claims were assignable." Id.

[7] As one Superior Court has observed, the elements of a claim of wrongful use of civil proceedings "appear to be identical to those of Connecticut's tort of vexatious litigation." *J.M. Scott Associates, Inc.* v. *Whitney*, Superior Court, judicial district of Litchfield, Docket No. CV-12-6006095 (September 6, 2012) (54 Conn. L. Rptr. 653, 655).

[8] We note that one federal District Court has held that a vexatious litigation claim may be assigned if it seeks to recover only attorney's fees. See *Zabelle* v. *Coratolo*, 816 F. Supp. 115, 121 (D. Conn. 1993). The plaintiff in this case, however, unlike the plaintiff in *Zabelle*, seeks to recover for a broad range of injuries, including but not limited to attorney's fees. In addition, Home Centers has already been compensated for the attorney's fees it incurred in the RMM litigation. See *Northeast Builders Supply & Home Centers, LLC* v. *RMM Consulting, LLC*, supra, 202 Conn. App. 328 n.15 ("[o]n September 4, 2018, following a hearing, the court issued a decision awarding the plaintiff $35,346.87 in attorney's fees as well as postjudgment interest pursuant to General Statutes § 37-3a of 6 percent per annum"). More fundamentally, we are not convinced that a vexatious litigation claim seeking to recover only attorney's fees falls outside the class of torts that are personal in nature and are therefore not assignable. Irrespective of the relief sought, a claim for vexatious litigation is personal in nature insofar as it arises from conduct that caused a particular person or entity to sustain injuries that are unique to that person or entity. This is true even with respect to vexatious litigation claims seeking to recover only attorney's fees. The damages one incurs as a result of having to expend money on legal fees due to the vexatious litigation tactics of another party are influenced by personal factors, including the very personal relationship between an attorney and a client, the personal decisions a client makes while defending against such claims, the unique legal advice a client receives from a particular attorney, and the personal decision a client makes when selecting an attorney for legal representation.

[9] We note that many states, unlike Connecticut, refer to vexatious litigation claims in the civil context as "malicious prosecution" claims. See, e.g., *Chervin* v. *Travelers Ins. Co.*, 448 Mass. 95, 102–103, 858 N.E.2d 746 (2006) ("[t]he tort [of malicious prosecution] is not confined to the wrongful initiation of criminal proceedings; it may be maintained for the unjustifiable initiation of a civil action" (internal quotation marks omitted)); *Burt* v. *Smith*, 181 N.Y. 1, 5, 73 N.E. 495 (1905) ("[a]n action for malicious prosecution is usually based upon an arrest in criminal proceedings, although it may be founded upon a civil action when commenced simply to harass and oppress the defendant"), cert. denied, 203 U.S. 129, 27 S. Ct. 37, 51 L. Ed. 121 (1906); *Ims* v. *Portsmouth*, 32 A.3d 914, 922 (R.I. 2011) (defining malicious prosecution "as a suit for damages resulting from a prior criminal or civil

legal proceeding that was instituted maliciously and without probable cause, and that terminated unsuccessfully for the plaintiff therein" (internal quotation marks omitted)).

————————————————